**AMERICAN METALS SERVICE EXPORT CO., et al.,
Plaintiffs, Appellees,**

v.

**AHRENS AIRCRAFT, INC.,
Defendant, Appellant.**

**No. 81–1185.**

United States Court of Appeals,
First Circuit.

Submitted Oct. 5, 1981.
Decided Dec. 14, 1981.

---

Patrick Duffy O'Neill and Colorado, Martinez & Odell, Hato Rey, P. R., on brief for defendant, appellant.

A. J. Amadeo Murga, Hato Rey, P. R., on brief for plaintiffs, appellees.

Before CAMPBELL, BOWNES and BREYER, Circuit Judges.

BREYER, Circuit Judge.

This is an appeal from an order of the district court denying defendant Ahrens

Aircraft, Inc.'s motion to vacate a default judgment of $12,951,[1] plus interest.

■ The case began on April 11, 1980, when two related Florida-based corporations, American Metals Service Export Co. and International Industrial Products, Inc., filed a complaint in the district court in Puerto Rico seeking damages of $10,241 and $12,958, respectively, for aluminum delivered but not paid for. The complaint was served on an officer of the corporation on May 21. When no timely answer was filed, plaintiffs moved for a default, which was entered by the clerk on June 24. *See* Fed. R.Civ.P. 55(a). On August 28, the magistrate entered an order to the effect that the complaint would be dismissed if plaintiffs did not move for a default judgment. On September 2, plaintiff American Metals moved for a dismissal as to it on grounds that Ahrens had satisfied its claim. At the same time plaintiff International Industrial Products moved for a default judgment, supported by an affidavit establishing the liquidated sum owed it. *See* Fed.R.Civ.P. 55(b)(1). A few days later, on September 5, the magistrate received a letter from Peter Ahrens, President of the defendant corporation.[2] The letter stated:

"For the record....

1. Material in the aproemate [sic] amount of $10–12,000 was not acceptable and the insurance claim has not been completed to this date.

2. We paid all invoices that came from American Metals, however, we requested an endorsement that cleared all debt.

3. Way *after* these companies filed their suit, *international industrial products* [sic]

---

1. Due to an evidently typographical error the judgment, as executed, was $12,951. The default judgment specified an amount of $12,958.

2. In its brief, Ahrens would have us view Peter Ahrens' letter as a *de facto* answer, barring the entry of a default judgment. We reject this line of argument for the simple reason that a corporation may be represented in court only by qualified counsel. *In re las Colinas Dev. Corp.*, 585 F.2d 7, 11 (1st Cir. 1978), *cert. denied, Schreibman v. Walter E. Heller & Co.*, 440 U.S. 931, 99 S.Ct. 1268, 59 L.Ed.2d 487 (1979). We reject the further argument that the corporation had sufficiently manifested its opposi-

tion to the claim to be considered to have "appeared in the action" and therefore be entitled to prehearing notice under Fed.R.Civ.P. 55(b)(2). This argument was not presented to the district court in the motion to vacate and may not now be raised. *United States v. $22,-640 in United States Currency*, 615 F.2d 356, 359 (5th Cir. 1980). Moreover, since judgment was entered by the clerk pursuant to Rule 55(b)(1), we question whether the notice requirement of Rule 55(b)(2) ever came into play. *See Anderson v. Taylorcraft, Inc.*, 197 F.Supp. 872, 873 (W.D.Pa.1961).

send us their invoices, still not corresponding to their claim.

"... I hereby wish to register our desire to file cross-complaint, in case that attorneys [sic] for plaintiff wish to continue actions. Please advise us if the other party has discontinued their plea."

Evidently unaware of this filing, the clerk on September 8 entered a judgment as authorized by Rule 55(b)(1). The judgment was satisfied in November 1980, under threat of attachment.

On February 3, 1981, five months after entry of judgment, Ahrens, now represented by counsel, moved to vacate the default judgment. An officer of Ahrens claimed to have overlooked and forgotten the summons served on May 21 because of extensive labor unrest at the time. Ahrens, however, offered little proof of its defense to International Industrial Product's claim. The motion to vacate incorporated by reference the statements in the Peter Ahrens letter, quoted above. It added merely that "Ahrens Aircraft never accepted from the [plaintiff] the materials on which the present Complaint is based. Said materials were rejected by the Federal Aviation Administration as defective."

The district court's rationale in refusing to vacate deserves full quotation:

"Essentially, Defendant claims that due to labor problems and adverse financial conditions during the months of May and June, the service of process was misplaced or forgotten. Defendant's meritorious defense is based on the rejection of the material sent by Plaintiff as being damaged. Plaintiff's position is that on July 17, 1979, Defendant Ahrens advised it that the material was damaged. Ahrens was then contacted by telephone and advised to file a claim immediately with the carrier. Ahrens was also put on notice that it was still obligated to Plaintiff to pay the full amount of the invoices. Although excusable neglect could be found here on the sole basis of Defendant's financial and labor problems through the first two months following

the filing of the complaint, Defendant never followed through on its expressed desire to file a cross-complaint nor was the Rule 60 Motion filed until almost five months after the default Judgment had been entered.

The Court also finds that Defendant has not established a meritorious defense either by a specific recitation of facts that support a "reasonable showing" that their position on the merits is likely to succeed, *Kostenbauder v. Sec. of HEW*, 71 F.R.D. 449 (D.C.Pa.1976), or by a credible allegation that such a defense exists.... Defendant was notified of the terms of payment and that it must present a claim to the carrier for damages which had occurred outside Plaintiff's warehouse. Defendant failed to take that action.

Furthermore, an Order of Execution of Judgment was signed in November, 1980 and a check covering the amount owed plus interest was sent to Plaintiff. A reopening of the default judgment would thus result in substantial prejudice to Plaintiff." (Citations omitted.)

In *American & Foreign Insurance Association v. Commercial Insurance Co.*, 575 F.2d 980, 983 (1st Cir. 1978), we enunciated the standards governing review of cases of this nature:

The law is settled that motions to set aside default judgments are addressed to the discretion of the trial court. We will not disturb the district court's decision unless it is clearly wrong.... Although normally there is a preference for allowing cases to be resolved on the merits, it is the district court's duty to weigh the reasons for and against setting aside a default judgment.... It is also settled that a party seeking to have a default judgment set aside bears the burden of showing good reason for the default and the existence of a meritorious defense. (Citations and footnote omitted.)

We also think that the district court's discretion may be guided by the moving party's "reasonable promptness" or dilatoriness in seeking relief. *Consolidated Masonry & Fireproofing, Inc. v. Wagman Construction*

*Corp.*, 383 F.2d 249, 251 (4th Cir. 1967); *see* Fed.R.Civ.P. 60(b) ("The motion shall be made within a reasonable time...."); *Central Operating Co. v. Utility Workers*, 491 F.2d 245, 253 (4th Cir. 1974); 6 Moore's Federal Practice, ¶ 55.10, at 55–231–32.

In the present case, we see no abuse of discretion in the court's weighing heavily against defendant its five-month delay in seeking relief, particularly since the judgment had been satisfied in the interim. This unexcused delay alone is an adequate basis for affirming. *Central Operating Co., supra; see Ralston Purina Co. v. Navieras de Canarias, S.A.*, 619 F.2d 152, 153 (1st Cir. 1980). We also see nothing incorrect in the court's conclusion that no meritorious defense had been shown. The proper course is to determine whether, leaving aside plaintiff's version of the facts, defendant had set out its defense with the "required specificity." *American & Foreign Insurance Association, supra.* In this regard we approve of the formulation recently developed by the Tenth Circuit:

> the court examines the allegations contained in the moving papers to determine whether the movant's version of the factual circumstances surrounding the dispute, if true, would constitute a defense to the action.... [T]he movant's version of the facts and circumstances supporting his defense will be deemed to be true.... [We require] a sufficient elaboration of facts to permit the trial court to judge whether the defense, if movant's version were believed, would be meritorious. *In re Stone*, 588 F.2d 1316, 1319 (10th Cir. 1978) (citations & footnote omitted).

*See Central Operating Co. v. Utility Workers*, 491 F.2d at 252 n.8; *Consolidated Masonry & Fireproofing, Inc. v. Wagman Construction Corp.*, 383 F.2d at 251 (requiring "statement of underlying facts to ... enable the court to appraise the merits of the claimed defense.").

Here the defendant's allegations, to the extent that we can understand them, would establish that the aluminum was defective due to corrosion during shipment and therefore "never accepted." But this does not necessarily establish that defendant was excused from paying for the goods. Defendant neglected to submit to the district court any contract terms which may have specified upon whom the risk of loss should fall in such an event.[3] Nor, in the absence of contract terms modifying the applicable commercial law, is there any hint of whether Florida or Puerto Rico law applies. Under the law of Puerto Rico, we note, a purchaser of unseen goods has a right freely to rescind "if the goods do not suit him" but that his rescission must be "within the term agreed upon, or, if there is no agreement, in such reasonable term as the seller may determine by requisition on the buyer, after the latter has had an opportunity to examine or test the goods, as the case may be."[4] 10 L.P.R.A. § 1704. *But see id.* § 1712. On the other hand, if the law of Florida applies, the Uniform Commercial Code hinges risk of loss upon the delivery terms of the contract. *See* Fla.Stat.Ann. § 672.2–509(1)(a) & (b). And, as we understand it, the law of Puerto Rico would also enable the parties to contract with respect to the exact point at which the risk of loss shifts. 10 L.P.R.A. § 1709. Thus, identification of the applicable law and production of the contract at issue appear crucial in determining whether defendant has proffered a meritorious defense. Left mainly in the dark by defendant, we may say no more than that it has shown the possibility of a meritorious defense. Had defendant shown diligence in seeking relief from the default judgment, we might be willing to count its fragmentary defense less heavily against it. *Cf. Moldwood Corp. v. Stutts*, 410 F.2d 351, 352 (5th Cir. 1969). But here the dilatoriness of the defendant, coupled with the weak show-

---

**3.** A document attached to plaintiff's opposition to the motion to vacate indicates that the goods were "FOB Miami," *i.e.*, the risk of loss shifted to the purchaser once the carrier had received them from the shipper. *See* Fla.Stat.Ann. § 672.2–509(1)(a).

**4.** A document submitted, again by plaintiff, at the time of the motion to vacate shows that defendant notified plaintiff of the defective shipment within a few weeks of its arrival.

ing on the merits, lead us to conclude that the district court was not "clearly wrong." *American & Foreign Insurance Association, supra.*

*Affirmed.*