**SOUTHERN NEW ENGLAND PRODUCTION CREDIT ASSOCIATION,**
Plaintiff,

v.

**O/S MY MARIE, Official Number 263270, her engines, tackle, etc., My Marie, Inc., Sebasco Wharf, Inc., Newbold R.H. Varian, Jr., Marie T. Varian, and National Bank of Fairhaven, N.A., Defendants.**

In Admiralty No. 84–0422 P.

United States District Court,
D. Maine.

June 17, 1985.

Andrew Cadot, Thomas Wheatley, Perkins Thompson, Hinckley & Keddy, Portland, Me., for plaintiff.

John R. Bass, II, Thompson McNaboe & Ashley, Portland, Me., for defendants.

MEMORANDUM OF DECISION AND ORDER ON MOTION TO CONFIRM BID FOR PURCHASE OF VESSEL AND MOTION FOR DISTRIBUTION OF FUNDS

GENE CARTER, District Judge.

I.

The Defendant vessel, the O/S MY MARIE, was put up for sale at auction by the United States Marshal for this district on May 24, 1985, pursuant to this Court's Order of Sale, filed on May 7, 1985. At the sale, the vessel was sold, subject to confirmation by this Court, to one William Doughty, the highest bidder at the sale, for a bid of Thirty Thousand Dollars ($30,000). This matter is now before the Court on the Plaintiff mortgagee's Motion to Confirm Bid for Purchase of Vessel and a related Motion for Distribution of Funds. On May 31, 1985, the Defendant MY MARIE, Inc. filed, through counsel, a limited objection to confirmation of the sale, stating the owner's objection to confirmation of the sale of the vessel at the bid price of $30,000, "such objection, however, being limited to acceptance of the bid price as the fair market value in any further proceedings to enforce deficiency judgments pursuant to 46 U.S.C. § 954." In the written submission in support of the objection, counsel for the vessel states that objection is made to confirmation of the sale "in the usual course on the grounds that the bid price is insufficient." Defendant MY MARIE, Inc.'s Memorandum, at 1. Counsel therein asks that the Court either allow a "fair value offset" to the bid price at the time of entry of any deficiency judgment, see Hart v. O/S COMMANDO, 570 F.Supp. 18 (W.D. Wash.1983), or order a second auction sale to be conducted by the United States Marshal.

The Complaint in this case alleges that on or about January 15, 1982, the Defendants executed a promissory note in the amount of eighty thousand dollars ($80,000), secured by a preferred ship mortgage on the vessel MY MARIA. The promissory note, a copy of which is attached to the Complaint, provided for future advances with interest thereon as set forth in the note. The note, on its face, represented the renewal of a prior indebtedness of the Defendants to the Plaintiff in the amount of twenty-nine thousand four hundred forty-eight dollars ($29,448), together with a current new money advance of fifty thousand five hundred fifty-two dollars ($50,552).

The Complaint alleges in paragraph 12 that the principal amount due on the note as of the date of the Complaint is one hundred. three thousand five hundred eighty-one dollars and seventy-eight cents ($103,581.78), indicating subsequent advances after the execution of the promissory note and the preferred ship mortgage of approximately twenty-three thousand dollars ($23,000) were made by the mortgagee.

The Complaint further alleges that on or about July 20, 1982, the Defendants executed another promissory note in the amount of twenty-one thousand dollars ($21,000), also secured by a preferred ship mortgage on the vessel. The Complaint alleges that Defendants are in default on both of the notes and preferred ship mortgages. On May 7, 1985, this Court entered judgment in this matter, as prayed for by Plaintiff, in the total amount of one hundred thirty-six thousand two hundred thirteen dollars and fifty-five cents ($136,213.55), representing indebtedness due on the two notes and mortgages, plus interest from February 25, 1985, to the date of judgment at the applicable per diem rate. It is for satisfaction of this judgment that the sale of the vessel was conducted.

As displayed by the record in this case, the prior history of the relationships of the parties with respect to the vessel justifies the conclusion that, as of approximately mid-July 1982, the Plaintiff was satisfied that the vessel had a value in excess of one hundred twenty-five thousand dollars ($125,000). In deciding the Motion for Confirmation of Sale, the Court has the benefit of the confidential appraiser's report prepared by the marine appraiser appointed by the Court in its Order filed on April 29,

1985. Because it is the decision of the Court to deny confirmation of the present bid and order that the vessel be subject to resale, the Court will not disclose herein the appraised value as determined in that report beyond saying that the value assigned to the vessel by the appraiser is significantly more than twice the amount of the present bid. In arriving at his valuation of the vessel, the appraiser took into account significant deficiencies in the vessel's power plant, equipage, and other gear. In addition the appraisal recognizes that:

Unfortunately, the eastern rigged trawlers are now virtually obsolete and with the surplus of modern steel stern trawlers on the market there is very little demand for this type of vessel. It appears that eastern rigged trawlers of this type lately are only purchased by beginning fishermen for very low prices as a stepping stone towards a more modern vessel.

Hence, the appraiser's assignment of a present market value to the vessel, which is more than twice the amount of the present bid, takes into account that there is a very limited market for a vessel of this type and makes significant allowance for deficiencies in the boat's condition and equipage.

## II.

It is the recognized law of this Circuit, cited to the Court by both parties, that prior to confirmation a bidder at a judicial sale enjoys no contractual right to consummate the transaction contemplated by his bid. *In re Gil-Bern Industries, Inc.*, 526 F.2d 627, 628 (1st Cir.1975). The basic policy of judicial sales in admiralty proceedings such as this one "is to benefit the creditors and debtor." *Munro Dry Dock, Inc. v. M/V HERON*, 585 F.2d 13, 14 (1st Cir.1978). To be weighed against this policy is the competing policy of "inspiring confidence in sales under the supervision of the court." *Munro Dry Dock, supra*, 585 F.2d at 14. Promotion of this policy "favors confirmation of a sale made to the highest bidder at a fairly conducted public auction." *Id.* For that reason, precedent suggests that confirmation of a bid ob-

tained in a fairly conducted public auction should not be denied unless the bid is grossly inadequate. *See Ghezzi v. Foss Launch & Tug Co.*, 321 F.2d 421 (9th Cir. 1963); *Munro Dry Dock, supra*, at 15. The Court of Appeals for this Circuit has said that if, on balancing these competing considerations, "there are very major disparities between the high bid at the sale and both the appraised value and upset bid, confirmation should be withheld at least where the interests of creditors do not point in a different direction." *Munro Dry Dock, supra*, at 16.

In this case there is no upset bid nor is there any definitive demonstration that a resale is likely to produce a better result in terms of the debtors' interests. However, it appears from representations of counsel at oral argument that the only bidders at the sale were Mr. Doughty, who made the successful bid, and the Plaintiff mortgagee. Further, it appears that there is a significant disparity between the amount of the bid and the appraised value of the vessel. The effect of sale at the amount of the bid is to leave outstanding a higher deficiency due upon the judgment entered herein than would be the case if sale could be achieved at a price closer to the appraised value of the vessel. The best interests of the mortgagee are not served by such a result because it is deprived of the maximum return attainable on the sale of its security.

In view of these considerations and the magnitude of the disparity between the amount of the bid and the appraised value, and taking into account that the bid represents less than 25% of the minimal value ascribed by the mortgagee to the vessel only three years ago, this Court is satisfied that in the exercise of its discretion it is appropriate to refuse confirmation of the present bid and to order that the vessel be subjected to a resale, promptly to be arranged. Although there is here no upset bid clearly demonstrating a higher realizable sale price, nor any indication of unfairness in the conduct of the actual sale, the magnitude of these disparities is enough in itself to call into question the integrity of this sale as a mechanism of this Court's processes exercised to benefit fairly the

interests of both the creditor and debtor here involved. A sale at the present bid price, in the face of the serious question raised as to how fairly it represents the fair market value of the vessel, will do little to inspire confidence in the integrity of judicial sales and may, indeed, give rise to legitimate skepticism as to the reliability of the device to provide a commercially fair result in the conflict between debtor and creditor. Counsel shall propose to the Court a new Order for Sale, which shall provide for additional notice besides publication in the *Portland Press Herald.* The appraiser's report shall be resealed by the Court and retained by the Clerk pending conduct of a new sale.

### III.

■ The Court declines to decree the allowance of a "fair value offset" to the bid price at the time of entry of any deficiency judgment as requested, in the first alternative, by the Defendant. Such allowance of a fair value offset is objected to by Plaintiff on the basis that the Fifth Circuit cases recognizing such a course have consistently utilized such an offset as a method of redressing unfairness in the bidding process " 'where a mortgagee has foreclosed under a preferred ship mortgage and subsequently repurchased the vessel at a judicial sale for a "shockingly low" price, and then attempts to obtain a deficiency judgment.' " Plaintiff's Memorandum in Response to Defendant MY MARIE's Limited Objection to Confirmation of Sale, at 5 (*quoting Colonial Bank v. Oil Screw Redd I,* 487 F.Supp. 276, 277 (E.D.La.1980), *aff'd,* 638 F.2d 1232 (5th Cir.1981). The Court has carefully studied the cases cited by both counsel with respect to the utilization of such a fair value offset and is satisfied that the cases where it has been used are distinguishable, in a significant operative sense, from the present case. In all of those cases, the mortgagee was itself, at a disparate price, the purchaser at the sale. Here, this is not the case. Even though, as the Defendant's counsel points out, the mortgagee was present at the sale and did bid on the vessel, no showing has been made that the mortgagee conducted its bidding with the intent to or for the purpose of causing the vessel to be unfairly sold at a price less than its market value. The fair value offset has only been used to date to redress an unfair result accomplished by such conduct on the part of the mortgagee. Absent such conduct, there is no basis upon which to penalize a mortgagee for the unfair result of a sale which was not, in all probability, the fault of either party.

### ORDER

Plaintiff's Motion to Confirm Bid for Purchase of Vessel, filed on May 28, 1985, is, accordingly, hereby DENIED; Limited Objection of Defendant MY MARIE, INC. to Confirmation of Sale is SUSTAINED; and the Defendant's request for a fair value offset is DENIED. In view of this, no Court action is required at this time on the Plaintiff's Motion for Distribution of Funds, also filed on May 28, 1985. It is FURTHER ORDERED that the vessel, O/S MY MARIE, be subjected to a resale pursuant to Order of this Court and that Plaintiff's counsel shall propose to the Court, forthwith, a new Order of Sale, directing that such resale be accomplished on or before July 22, 1985.

So ORDERED.