**MAINE NATIONAL BANK, Plaintiff,**

**v.**

**F/V EXPLORER, Official No. 621268, her engines, tackle, apparel, furniture, equipment, and all other necessaries thereunto appertaining and belonging, Defendant.**

**No. 86–0306 P.**

United States District Court,
D. Maine.

June 8, 1987.

Order Continuing Hearing June 25, 1987.

U. Charles Remmel, II, R. Terrence Duddy, Graydon G. Stevens, Portland, Me., for plaintiff.

John W. Philbrick, Portland, Me., Robert S. Potters, Boston, Mass., for defendant.

## MEMORANDUM OF DECISION AND ORDER

GENE CARTER, District Judge.

This case involves the action of Maine National Bank (MNB, or the Bank) to foreclose on two duly recorded preferred ship mortgages on the F/V EXPLORER, the mortgagor being in each case one Grover Nix (Nix).[1] MNB alleges that Nix has defaulted on the payment of sums due and owing, and brings this *in rem* admiralty proceeding, pursuant to Supplemental Rules for Certain Admiralty and Maritime Claims C and E, and 46 U.S.C. § 951. (Supp. III 1982).

Now pending before the Court are the following motions: Defendant's Motion for Relief From Default Judgment and From the Order of Sale (Motion for Relief); Defendant's Motion to File an Answer Late; Plaintiff's Motion for Approval of Bid and Order Confirming Sale; and Defendant's Motion for an Order Allowing Private Sale and Escrow Proceeds.

Because the facts necessary to a determination of the above motions are somewhat complex, the pertinent facts will be discussed in the context of each motion.

## I. RELIEF FROM DEFAULT JUDGMENT

On September 25, 1986, MNB filed a Verified Complaint to initiate this *in rem* admiralty proceeding against the F/V EXPLORER.[2] On September 26, 1986, the Court issued a Warrant of Maritime Arrest and ordered that any person claiming an interest in the EXPLORER be entitled to a prompt hearing to show why the arrest should not be vacated or other relief granted. The parties stipulate that MNB, through its counsel, caused a copy of their Verified Complaint, Order for Issuance of Maritime Arrest, and various other motions and orders to be sent by certified mail, addressed to Grover Nix at 64 Central

---

**1.** On December 30, 1981, Nix assumed a promissory note in the original principal amount of $750,000 payable to MNB in monthly installments, the last installment being due on May 30, 1995. The note was secured by a first preferred ship mortgage ("First Mortgage") on the F/V EXPLORER that was duly recorded. On December 30, 1981, Nix executed a second promissory note in the principal amount of $73,644.94 payable to MNB in monthly installments, the last installment being due December 30, 1988. That note was secured by a second preferred ship mortgage ("Second Mortgage") on the EXPLORER that was also duly recorded. Stipulation of the Parties, Statement of Uncontested Facts, ¶¶ 1–4 [hereinafter Stip.].

**2.** MNB holds as mortgagee a First and Second Preferred Mortgage given by mortgagor Nix on the F/V EXPLORER. *See supra* note 1. Under Federal law, "[a] preferred mortgage shall constitute a lien upon the mortgaged vessel in the amount of the outstanding mortgage indebtedness secured by such a vessel. Upon the default of any term or condition of the mortgage, such lien may be enforced by the mortgagee by suit in rem in admiralty." 46 U.S.C. § 951 (Supp. III 1982). The statute goes on to provide:

> In addition to any notice by publication, actual notice of the commencement of any such suit shall be given by the libellant, in such manner as the court shall direct, to (1) the master, other ranking officer, or caretaker of the vessel, and (2) any person who has recorded a notice of claim of an undischarged lien upon the vessel, as provided in section 925 of this Appendix, unless after search by the libellant satisfactory to the court, such mortgagor, master, other ranking officer, caretaker, or claimant is not found within the United States. Failure to give notice to any such person, as required by this section, shall not constitute a jurisdictional defect; but the libellant shall be liable to such person for damages in the amount of his interest in the vessel terminated by the suit.

46 U.S.C. § 951 (Supp. III 1982).

Street, Andover, Massachusetts (Stip. ¶ 11).[3] The parties also stipulate that the documents were returned to the sender with the Postal Service's notation that the package had been "refused" (Stip. at ¶ 11); Nix, however, asserts that it was a tenant who actually refused service. Motion for Relief, at 4.

The following events relating specifically to this discussion then occurred:

September 26, 1986—EXPLORER arrested; service on Captain Scott Leavitt (Stip. ¶ 13);

September 30 to October 2, 1986—Newspaper notice in Portland Press Herald (Stip. ¶ 14);

October 2, 1986—John Greenaway (Business Manager of the EXPLORER) told Nix that the EXPLORER had been seized (Stip. ¶ 16);

October 4, 1986—Greenaway and Nix met in Andover, Massachusetts; Greenaway again reported the seizure to Nix (Stip. ¶ 17);

October 31, 1986—Entry of default and default judgment against the EXPLORER (Stip. ¶ 18);

November 3, 1986—Nix filed suit in Massachusetts federal court based on the same facts that gave rise to MNB's suit (Stip. ¶ 20); Nix alleges breach of contract; "Intentional Tort, Interference with Advantageous Economic Relationship"; and Irreparable Injury;

December 2, 1986—Court ordered special sale of EXPLORER (Stip. ¶ 23);

December 11, 1986—Nix moved for a stay for "thirty days after receipt of a complaint," seeking additional time to respond to order for special sale, alle-

gations of default, to assess jurisdiction, and to revive the sale, if possible (Stip. ¶ 24);[4]

January 23, 1987—Nix moved for relief from the default judgment and order of sale (Stip. ¶ 26).

Nix's position is that he did not know that this action was pending until December 11, 1986, after default judgment had already entered. Motion for Relief, at 1–2. He claims that "there has been a consistent pattern of failing to provide [him] ... with copies of pleadings or in fact with timely copies of Court Orders;" that the service given did not provide notice of the foreclosure sale sufficient to meet constitutional due process standards; and that the default judgment and foreclosure sale should therefore be set aside. Id.[5] He also asserts certain defenses which he sets out in a cursory fashion. Id. at 1, 3.

The Bank's position is that the notice was adequate under the Supplemental Rules for Certain Admiralty and Maritime Claims (the Supplemental Rules), and that the foreclosure was proper under the provisions governing foreclosure of preferred mortgages as set out at 46 U.S.C. § 951. Memorandum in Opposition to Motions of Grover Nix for Relief from Default Judgment and Order of Sale, to File Answer Late, and For Additional Time. MNB would therefore have the Court deny Nix's motion for relief from the default judgment. Id.

█ As an initial matter, Nix's contention that the notice provisions of the Supplemental Rules and of 46 U.S.C. § 951 violate the constitutional requirements of due process is easily dispatched. Courts

---

3. The parties apparently do not dispute that Nix owns the house located at that address. *See* Memorandum of Defendant and Claimant in Support of their Motion to Vacate Default Judgment and in Support of their Opposition to Confirmation of Judicial Sale, at 8 (referring to the mailing sent to 64 Central Street, Nix's attorney represents that the Verified Complaint was sent to "[Nix's] Massachusetts address"); Motion for Relief, at 4 (certified letter sent to "Nix's home in Andover, Massachusetts" was refused). Nix claims, however, that his present residence is London, England. *Id.* at 3.

4. The Court denied that motion on January 14, 1987; during the period from December 15 to January 14, Nix filed no pleadings.

5. Nix moves pursuant to Rule 60(b), which provides, in relevant part:
   On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons (1) mistake, inadvertence, surprise, or excusable neglect; ... or (6) any other reason justifying the relief from the operation of the judgment. Fed.R.Civ.P. 60(b).

have long recognized the special needs of persons engaged in maritime commerce and the corresponding need of *in rem* proceedings to hold the vessel itself as obligor. *See, e.g., Trans-Asiatic Oil Ltd. S.A. v. Apex Oil Co.*, 743 F.2d 956, 960–63 (1st Cir.1984) (holding that the attachment procedures available under Supplemental Rule B meet the requirements of fifth amendment due process; discussing also, with approval, proposed amendments to Supplemental Rule E that have since been adopted (Rule E(4)(f))); *Amstar Corp. v. S/S ALEXANDROS T*, 664 F.2d 904, 907–12 (4th Cir.1981) (discussing the constitutionality of *in rem* proceedings generally and Supplemental Rules C and E in particular). The Supplemental Rules were amended in 1985 to address concerns that certain provisions were constitutionally deficient. *See* Advisory Committee Notes to Rule C, 1985 Amendment ("Rule C(3) has been amended to provide for judicial scrutiny before the issuance of any warrant of arrest. Its purpose is to eliminate any doubt as to the rule's constitutionality under the *Sniadach* line of cases");[6] Advisory Committee Notes to Rule E, 1985 Amendment ("Rule E(4)(f) is designed to satisfy the constitutional requirement of due process by guaranteeing to the shipowner a prompt post-seizure hearing at which he can attack the complaint, the arrest, the security demanded, or any other alleged deficiency in the proceedings.")

In short, there is no merit to Nix's contention that the notice provisions of the Supplemental Rules and of 46 U.S.C. § 951 are unconstitutional. After reviewing the facts as stipulated by the parties, the Court is satisfied that the requirements of Rules C and E, and of 46 U.S.C. § 951, have been met. Finding that the procedure followed was correct, the Court will now consider the merits of Nix's request for relief from default judgment.

The Federal Rules of Civil Procedure provide that the Court may relieve a party from a final judgment for "mistake, inadvertence, surprise, or excusable neglect;" or "any other reason justifying relief from the operation of the judgment." Fed.R. Civ.P. 60(b)(1), (6). The First Circuit has, on several occasions, discussed the standards a district court should apply to determine whether relief from a default judgment is appropriate.

> The law is settled that motions to set aside default judgments are addressed to the discretion of the trial court.... Although normally there is a preference for allowing cases to be resolved on the merits, it is the district court's duty to weigh the reasons for and against setting aside a default judgment.... It is also settled that a party seeking to have a default judgment set aside bears the burden of showing good reason for the default and the existence of a meritorious defense.

*American Metals Service Export Co. v. Ahrens Aircraft, Inc.*, 666 F.2d 718, 720 (1st Cir.1981) (citing *American & Foreign Ins. Ass'n v. Commercial Ins. Co.*, 575 F.2d 980, 983 (1st Cir.1978). *See also United States v. V & E Engineering & Construction Co.*, 819 F.2d 331, 336 (1st Cir. 1987) (party who seeks to set aside default judgment must show both that there was good cause for the default *and* that it has a meritorious defense). The First Circuit has also stated that "the district court's discretion may be guided by the moving party's 'reasonable promptness' or dilatoriness in seeking relief." *American Metals Service Export*, 666 F.2d at 720.

In *American Metals Service Export, supra*, the First Circuit upheld the district court's refusal to set aside a default judgment. The movant had delayed five months in seeking relief and had failed to

---

**6.** In *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), the Supreme Court held that a state's prejudgment garnishment of wages procedure, without notice and prior hearing, violated the fundamental principles of procedural due process. In *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), the Supreme Court held

unconstitutional certain provisions of state statutes that allowed a private party, without a hearing or prior notice to the other party, to obtain a prejudgment writ of replevin through *ex parte* application to a court clerk upon the posting of a bond for twice the value of the property to be seized.

state its defenses with the required specificity.[7] In *American & Foreign Insurance Association, supra,* the First Circuit also upheld the district court's refusal to set aside a default judgment, where there was no excusable neglect and the movant "did not even allege a meritorious defense, let alone set it out with the required specificity." 575 F.2d at 983. In *V & E Engineering & Construction Co., supra,* the First Circuit again refused to set aside a default judgment, this time because good cause had not been shown for the default.

■ In the present case, Nix has failed to demonstrate the excusable neglect required by Rule 60(b)(1). His only justification for failing to challenge the default judgment earlier is that notice was insufficient and that he did not know the present case was pending. The stipulated facts, however, do not support Nix's position. Nix claims that he was out of the country until October 1, 1986 (Nix Affidavit, ¶ 6 (Dec. 11, 1986)). He admits, however, that Greenaway told him on two occasions (October 2 and 4, 1986) that the EXPLORER had been seized (Stip. ¶¶ 16, 17). At the latest, then, Nix knew on October 2, 1986, that the EXPLORER had been seized. Nix is an attorney, and any reasonable attorney should have been on notice that legal action had been taken against the vessel upon hearing of the vessel's arrest.[8] The reasonable thing for Nix to do at that time would have been to call MNB to inform himself of the status of the EXPLORER.

Nix knew of the seizure *four weeks before* default judgment was entered, yet he never inquired about the vessel's seizure either through the Bank or its counsel (Stip. ¶ 19).

■ Even if one accepts Nix's version that he did not know this case was pending until December 11, 1986, some six weeks passed before Nix finally moved for relief from the judgment. Those six weeks, it must be remembered, came after Nix admittedly knew his vessel had been seized, and extended to *four months* the time between the entry of default judgment and Nix's motion for relief therefrom. A delay of six weeks under the circumstances of this case hardly constitutes "reasonably prompt" action. This Court refuses to countenance Nix's obvious and extreme dilatoriness by finding that such actions constitute "excusable neglect."

Because the Court has determined that Nix's conduct does not meet the standard of excusable neglect, the Court need not consider whether Nix has one or more meritorious defenses. *See V & E Engineering & Construction Co., supra.* For the sake of completeness, however, the Court will consider briefly the strongest of the defenses asserted by Nix. The Court must determine whether Nix has provided "a sufficient elaboration of fact to permit [the Court] to judge whether the defense[s], if [Nix's] version were believed, would be

---

7. The First Circuit, adopting the position of the Tenth Circuit set out in *In re Stone,* 588 F.2d 1316, 1319 (10th Cir.1978), stated:

[T]he court examines the allegations contained in the moving papers to determine whether the movant's version of the factual circumstances surrounding the dispute, if true, would constitute a defense to the action.... [T]he movant's version of the facts and circumstances supporting his defense will be deemed to be true.... [We require] a sufficient elaboration of facts to permit the trial court to judge whether the defense, if movant's version were believed, would be meritorious.

*American Metals Service Export,* 666 F.2d at 721 (citations and footnote omitted).

8. Nix asserts that he believed the EXPLORER had been taken peaceably pursuant to section

9–503 of the Uniform Commercial Code. Defendant's Further Motion for Stay (Jan. 15, 1987). Section 9–503 provides, in part, that "[u]nless otherwise agreed, a secured party has on default the right to take possession of the collateral. In taking possession, a secured party may proceed without judicial process, if this can be done without breach of the peace, or may proceed by action." In addition to the fact that Nix offers no grounds to support his belief that the vessel had been seized properly, the Court suggests that it would be inexcusable for an attorney in Nix's position to proceed on the basis of mere *belief.* Even under section 9–503, a judicial proceeding could have been pending, and the *only* appropriate course of action under the circumstances was to ascertain as a *matter of fact* the EXPLORER's precise status.

meritorious." *American Metals Service Export,* 666 F.2d at 721.[9]

Having stated the standard, the Court notes first that Nix's Motion for Relief from Default Judgment and Order of Sale, examined on its face, fails to allege any defense with the required specificity. The motion itself simply states that "[t]here are meritorious defenses to the action at bar, including the fact that the mortgages are not in default, [and] that the plaintiff has repeatedly, and over a long period of time failed to respond to written demands for an accounting...." The motion also states that Nix was "entitled by contract" to certain terms (*e.g.,* to miss certain payments and to have the interest rate adjusted). Nix does not, however, provide the Court with any further facts to support his allegations. And any reference to the Answer filed on the same day is equally devoid of facts. *See* Motion to File Answer Late (Answer attached).[10] Although the Court must deem the movant's versions of the factual circumstances to be true, the Court is not required to piece together a defense from the fragmentary bits of fact submitted by the movant. Exercising what can only be considered an overabundance of caution, the Court will nevertheless endeavor to address the strongest of Nix's cursorily asserted defenses.[11]

Nix's strongest argument would appear to be that this *in rem* proceeding is invalid because he was entitled by contract to receive written notice of default and to miss certain payments; having received no notice, Nix asserts, there was no default upon which MNB could legally act. *See* Motion For Relief from Default Judgment and Order of Sale. Nix's motion fails to direct the Court's attention to any specific provisions of the two mortgages or the notes on which Nix became obligated. On its own initiative, the Court has examined these documents and finds the asserted defense to be without merit. Default is defined in article II, section 1 of the First Preferred Mortgage as "one or more" of five events, including nonpayment. Contrary to Nix's assertion, however, default for nonpayment does *not* require written notice.[12] Likewise, the Second Preferred Mortgage made no requirement of written notice in the event of default for nonpayment. Second Preferred Mortgage, art. II. The note on the Second Preferred Mortgage did entitle Nix to defer three monthly payments under that note. Nix, however, has not disputed MNB's contention that he had not made payment for at least twelve months prior to the vessel's arrest, so that the provisions for three months allowed deferral is apparently irrelevant. Moreover, numerous provisions of both Preferred Mortgages protect the mortgagee's (*i.e.,* MNB's) right to proceed directly against the vessel in the event of default.[13] The Court finds noth-

---

9. *See supra* note 7.

10. Nix filed a Second Affidavit on January 23, 1987, asserting certain facts relevant to the possible existence of one or more meritorious defenses. MNB opposes the filing of Nix's Second Affidavit on the ground that it was untimely filed; alternatively, MNB argues that even if the Court considers the Second Affidavit, it fails to raise any adequate defense. The Court wishes to be clear that Nix's filing practice has done little to aid the Court in a logical and efficient consideration of the issues presented. Nix's shortcomings in the handling of this case leave the Court with no doubt that it would be justified in refusing to consider the Second Affidavit. However, because the Court has chosen to discuss Nix's asserted defenses, the Court will consider the factual allegations set forth in the Second Affidavit. It is the Court's conclusion that such consideration does not alter the Court's final decision.

11. In addition to the defenses discussed in the text, Nix also asserts the following defenses: failure to state a claim upon which relief can be granted; lack of subject matter jurisdiction; lack of personal jurisdiction over Nix; and forum *non conveniens.* The Court considers each of these asserted defenses to be without merit, at best, and frivolous, at worst.

12. Default in the "prompt and faithful performance or observance of any *other* agreements, covenants or conditions herein contained" does require written notice. First Preferred Mortgage art. 1, sec. 1(e) (emphasis added). The other four situations defining default, including nonpayment, are silent as to any requirement of notice.

13. *See* First Preferred Mortgage, art. I, sec. 3 (mortgagor to display, at all times, a certified copy of the mortgage "to be exhibited by the master to any person having business with said vessel which might give rise to a maritime lien

ing in the documents to support Nix's argument that he was not in default or that MNB had waived its legal entitlement to proceed *in rem* against the EXPLORER.

■ A second defense suggested by Nix is that MNB has failed to provide him with written requests for an accounting. The Court's response to this asserted defense is brief. First, both parties apparently agree that Nix met with MNB officials on September 12, 1986, to discuss the status of Nix's accounts.[14] Although the parties apparently dispute the adequacy of the written documentation provided by MNB, Nix does admit that "the Bank provided Nix with a 'document' purporting to 'breakdown' his payments of more than four hundred sixty thousand ($460,000) dollars." Memorandum of Defendant and Claimant in Support of Their Motion to Vacate Default Judgment and in Support of Their Opposition to Confirmation of Judicial Sale, at 5–6. The Court is satisfied that such a document, together with clear language in the notes calling for monthly payments, was sufficient to put Nix on notice of his default. Moreover, the Court is not aware of any law, nor does Nix direct the Court's attention to any law, that establishes a request for an accounting as a defense to an action in admiralty or to an action on a note. As discussed above, the documents in question did not *require* MNB to notify Nix in writing upon a default for nonpayment. The Court therefore finds no merit to this second defense asserted by Nix.

The third and final asserted defense that the Court deems worthy of response has already been addressed—namely, that the service of process was unconstitutional. As discussed *ante*, the Court finds this argument clearly lacking in merit.

In any case, the mere possibility of a meritorious defense, when weighed against the egregiousness of Nix's dilatoriness,

cannot justify setting aside the default judgment. In reaching this conclusion, the Court finds persuasive the reasoning of the Court of Appeals for the First Circuit in *American Metals Service Export:*

> Had the defendant shown diligence in seeking relief from the default judgment, we might be willing to count its fragmentary defense less heavily against it. . . . But here the dilatoriness of the defendant, coupled with the weak showing on the merits, lead us to conclude that the district court was not 'clearly wrong' [in refusing to set aside the default judgment].

666 F.2d at 721 (citations omitted).

Finally, the Court is firmly convinced that Nix's response in this action, taken as a whole, indicates that he is not a "good faith litigant" for whom leniency might otherwise be appropriate. In addition to the less than professional handling of this action discussed so far, the Court is constrained to note that it views with a critical eye Nix's action filed on November 3, 1986 in the United States District Court for the District of Massachusetts. The Massachusetts suit is based on the same set of facts that formed the basis for MNB's suit pending in this Court. At the time Nix filed the Massachusetts suit, he admittedly knew that the EXPLORER had already been seized. Apparently Nix filed that suit without any inquiry into the legal status of the EXPLORER; had Nix inquired, he undoubtedly would have learned that the EXPLORER was under arrest in the District of Maine. The law is clearly established that arrest of a vessel provides the arresting court with exclusive jurisdiction over controversies relating to the vessel. *See Wong Shing v. M/V MARDINA TRADER,* 564 F.2d 1183, 1188 (5th Cir.1977) (citing *Moran v. Sturges,* 154 U.S. 256, 14 S.Ct. 1019, 38 L.Ed. 981 (1894)). Reasonable in-

---

upon said vessel or to the sale, conveyance or mortgage thereof"); *id.* art. II, secs. 1–3 (defining default and the remedies therefor). *See also* Second Preferred Mortgage, art. I, sec. 6 (corresponding to First Preferred Mortgage, art. I., sec. 3); *id.,* art. II, secs. 1–3 (same as First Preferred Mortgage, art. II, secs. 1–3).

**14.** *See, e.g.,* Plaintiff's Memorandum in Opposition to Motions of Grover Nix for Relief from Default Judgment and Order of Sale, to File Answer Late and for Additional Time, at 15, n. 10; Memorandum of Defendant & Claimant in Support of Their Motion to Vacate Default Judgment and in Support of their Opposition to Confirmation of Judicial Sale, at 6.

quiry—both of the facts and of the law— would have put Nix on notice that an action was pending in the District of Maine that precluded any other court from exercising its jurisdiction over matters relating to the EXPLORER.

In any event, the facts in this case stop far short of demonstrating "excusable neglect." Nix's Motion for Relief from Default Judgment is therefore denied. The Court accordingly denies also Nix's Motion to File an Answer Late.

## II.  CONFIRMATION OF SALE

On December 2, 1986, the Court ordered that a special sale take place. As part of that order, the Court provided that Nix was to file, on or before December 12, 1986, any evidence that he had a private party who was "ready, willing, and able" to buy before January 10, 1987. In the event that Nix failed to produce such evidence, the Court ordered a public auction to take place on January 14, 1987. Nix failed to produce a buyer, and the auction was conducted by a United States Marshal on January 14, 1987. MNB was the highest bidder with its bid of One Hundred Seventy Thousand Dollars ($170,000.00).

The Bank now moves to confirm that sale. Its position is that the sale was properly conducted with proper notice in several newspapers [15] and notice to those with a known interest in purchasing the EXPLORER. The Bank urges the Court to issue a bill of sale for $170,000 or, alternatively, to allow the Bank to increase its bid in an amount acceptable to the Court.

Nix challenges the fairness of the auction and argues that MNB's bid is "grossly inadequate." Nix offers two valuations to support his contention that the EXPLORER's fair market value is far in excess of $170,000. The first, a 1982 valuation by John W. Gilbert Associates, Inc., estimates the EXPLORER's fair market value to be $900,000. The second, a 1985 survey by Jeffrey A. Johnson & Associates, estimates

the vessel's "present value" to be "$680,-000 for insurance purposes," with a replacement cost of 1.3 million dollars.

■ The First Circuit has established the general principle that if a public auction is conducted fairly, the court should confirm the sale at the highest bid price unless that price is "grossly inadequate." *Munro Drydock, Inc. v. M/V HERON*, 585 F.2d 13, 14–15 (1st Cir.1978). The "grossly inadequate" standard reflects a balancing of two competing concerns.

> The policy of inspiring confidence in sales under the supervision of the court favors confirmation of a sale made to the highest bidder at a fairly conducted public auction. But this policy must be weighed against the purpose to be achieved by these judicial sales, which is to benefit the creditors and debtor.

*Munro Drydock,* 585 F.2d at 14. In *Munro Drydock,* the First Circuit held that the district court erred in confirming a judicial sale without a hearing, where the government showed an appraisal value of two hundred percent more than the highest bid and showed a likelihood of an upset bid at least three times greater than the highest bid.

This Court has also examined the propriety of confirming a judicial sale. In *Southern New England Production Credit Ass'n v. O/S MY MARIE,* 611 F.Supp. 757 (D.Me.1985), the Court, citing *Munro Drydock,* refused to confirm a judicial sale. The valuation of the court-appointed appraiser in that case was more than two times that of the highest auction bid, and the bid was less than twenty-five percent of the minimum value ascribed to the mortgage three years earlier. The Court, reasoning that the disparity was so great as to be unfair to the mortgagee, denied confirmation even though there was no evidence of an upset bid clearly demonstrating a higher realizable sale price and no evidence that the sale had been conducted unfairly.

---

**15.** Notice of Sale was published by Court Order in the Portland Press Herald. MNB represents to the Court that, although not required under the Order, publication was also made in the

New York Times, Beverly Times, National Fisherman, Commercial Fisheries News, Boston Globe, Portsmouth Herald, and the Bangor Daily News.

■ In the present case, the Court again ordered a confidential appraisal. That appraisal estimates a fair market value for the EXPLORER that is more than twice MNB's high-auction bid of $170,000.[16] Although Johnson's valuation does not give a fair-market-value estimate, and the Gilbert Associates' evaluation is five years old, the two valuations do suggest that MNB's winning auction bid does not accurately reflect the EXPLORER's present market value. Additionally, Nix states that from 1982 through 1985, he paid approximately $400,000 in interest and principal to MNB.[17] On two notes totaling approximately $824,000, payment of $400,000 would leave a balance in the neighborhood of $424,000—a further indication that $170,000 is a figure too low to "benefit the creditor and debtor."

For the reasons set forth above, the Court concludes that it is appropriate to hold an evidentiary hearing on MNB's Motion for Approval of Bid and Order Confirming Sale. The Court will conduct a hearing, even though Nix has already had one opportunity to produce a "ready, willing, and able" private buyer, because it feels the disparity between the court appraisal and MNB's bid is sufficient to warrant further consideration.

Because Nix's Motion for Order Allowing Private Sale and Escrow of Proceeds is obviously related, the Court will hear argument on both motions at a time to be set by the Court.

### III. CONCLUSION AND ORDER

For the foregoing reasons, it is hereby *ORDERED* that:

(1) Defendant's Motion for Relief from Default Judgment, and Defendant's Motion to File an Answer Late, be, and hereby are, *DENIED;*

(2) A hearing shall be scheduled by the Court to consider Plaintiff's Motion for Approval of Bid and Order Confirming Sale; Defendant's Motion for Relief from the Order of Sale; and Defendant's Motion for Order Allowing Private Sale and Escrow Proceeds.

### ORDER CONTINUING HEARING ON PLAINTIFF'S MOTION FOR APPROVAL OF BID AND ORDER CONFIRMING SALE AND DEFENDANT'S MOTIONS FOR RELIEF FROM THE ORDER OF SALE AND FOR ORDER ALLOWING PRIVATE SALE AND ESCROW PROCEEDS

This matter is to be before this Court at 4:15 p.m. this date for a hearing on the Plaintiff's Motion for Approval of Bid and Order Confirming Sale and the Defendant's Motions for Relief From Order of Sale and for Order Allowing Private Sale and Escrow of Proceeds. This Court entered a default judgment herein in favor of the Plaintiff and against the Defendant, F/V EXPLORER, on October 31, 1986. Said judgment was in the amount of $828,522.20. Defendant then filed various motions seeking to vitiate the force of that default judgment, including a Motion for Relief From Default Judgment and Order of Sale, which was filed on January 23, 1987. On June 8, 1987, the Court entered its Memorandum of Decision and Order denying the Defendant's Motion for Relief from Default Judgment and a related motion to file an answer late, and further ordered that: "A hearing shall be scheduled by the Court to consider Plaintiff's Motion for Approval of Bid and Order Confirming Sale; Defendant's Motion for Relief from the Order of Sale; and Defendant's Motion for Order Allowing Private Sale and Escrow Proceeds." (see page 470) The Clerk subsequently scheduled the Defendant's motions for this date. On reviewing the file in preparation for today's hearing, the Court discovered that on June 19, 1987, Defendant had filed a Notice of Appeal from the Court's Memorandum of Decision and Order of June 8, 1987.

---

16. Because the Court has decided to conduct a hearing on the Motion for Approval of Bid and Order Confirming Sale, the Court does not reveal the amount of the appraisal at the present time.

17. *See* Complaint, ¶ 15, *Nix v. Pollis,* Civil No. 86–3183–WF (D.Mass. Oct. 17, 1986). *But see* Second Affidavit of Nix (Jan. 23, 1987), stating that he has paid $350,000 in principal and interest.

As a general rule, the filing of a notice of appeal divests the district court of jurisdiction to adjudicate any matters related to the appeal. *United States v. DiStasio,* Crim. No. 820 F.2d 20, 23–24 (1st Cir.1987); *United States v. Wells,* 766 F.2d 12, 19 (1st Cir.1985). After filing the Notice of Appeal, the case remains in the district court only for procedures "in aid of the appeal." *Spound v. Mohasco Indus., Inc.,* 534 F.2d 404, 411 (1st Cir.), *cert. denied,* 429 U.S. 886, 97 S.Ct. 238, 50 L.Ed.2d 167 (1976). The rule is stated in full, as it is relied upon in this circuit, in 9 J. Moore, B. Ward, & J. Lucas, *Moore's Federal Practice* ¶ 203.11 (1987):

> The filing of a timely and sufficient notice of appeal has the effect of immediately transferring jurisdiction from the district court to the court of appeals with respect to any matters involved in the appeal. It divests the district court of authority to proceed further with respect to such matters, except in aid of the appeal, or to correct clerical mistakes under Rule 60(a) of the Federal Rules of Civil Procedure or Rule 36 of the Federal Rules of Criminal Procedure, or in aid of execution of a judgement [sic] that has not been superseded, until the district court receives the mandate of the court of appeals.

*Id.* at 3–44 (footnotes omitted). The matters to be before this Court for adjudication relate to the confirmation of the sale which was previously ordered by the Court. *See Monroe Dry Dock, Inc. v. M/V HERON,* 585 F.2d 13, 16 (1st Cir.1978); *Southern New England Prod. Credit Ass'n v. O/S MY MARIE,* 611 F.Supp. 757 (D.Me.1985). Such matters would normally be ancillary to the adjudication by judgment of the ultimate liability of the defendant, if any. Thus, in the normal case, an argument can be convincingly made that such matters are not "involved in the appeal" under the cited rule. As such, jurisdiction to go forward with the adjudication of those matters would not normally be divested.

■ Here, however, the situation is different. Defendant attacked, by the Motion for Relief from Default Judgment and Order of Sale, the validity of the initial seizure of the vessel on constitutional and other grounds. The issues generated by that attack were adjudicated by this Court's Memorandum of Decision and Order of June 8, 1987. It is apparent to the Court that if, on appeal, the Court of Appeals for the First Circuit should determine that the Defendant's attack upon the initial seizure and Order of Sale is meritorious, this Court would have no proper authority to confirm a sale which has resulted therefrom. Accordingly, the Court concludes that the matters before the Court on the presently pending motions for adjudication are "matters involved in the appeal," 9 *Moore's Federal Practice, supra,* at 3–44, and that this Court is without jurisdiction at this time to adjudicate those matters.

Accordingly, the hearings scheduled for this date are hereby *CONTINUED* to await the mandate of the Court of Appeals in the pending appeal or further action of the Court of Appeals authorizing this Court to proceed on the pending motions.

So *ORDERED.*