**MAINE NATIONAL BANK,**
**Plaintiff, Appellee,**

v.

**F/V EXPLORER, etc.,**
**Defendant, Appellant.**

**No. 87–1564.**

United States Court of Appeals,
First Circuit.

Heard Oct. 6, 1986.

Decided Nov. 17, 1987.

Robert S. Potters with whom Henry A. Brown, Boston, Mass., and Potters & Sands, P.C., were on brief, for defendant, appellant.

Brackett B. Denniston, III with whom Dennis R. McBride, Goodwin, Procter & Hoar, Boston, Mass., U. Charles Remmel, II, Kelly, Remmel & Zimmerman, Portland, Me., Timothy R. McHugh and Hoch & McHugh, Boston, Mass., were on brief, for plaintiff, appellee.

Before BOWNES, Circuit Judge, TIMBERS,[*] Senior Circuit Judge, and SELYA, Circuit Judge.

TIMBERS, Circuit Judge:

Appellant Grover Nix, the mortgagor of two ship mortgages, appeals from an order entered June 8, 1987 in the District of Maine, Gene Carter, *District Judge*, 633 F.Supp. 462, denying appellant's motion to vacate the default judgment and foreclosure sale against his ship in favor of appellee Maine National Bank (the "Bank"), the mortgagee. On appeal, appellant contends (1) that the notice of the action which he received violated due process; and (2) that the judgment should be vacated because his failure to respond to the action was due to excusable neglect and he had meritorious defenses. We hold that the notice complied with controlling law, and that Nix failed to demonstrate the excusable neglect required by the Federal Rules of Civil Procedure to vacate a default. We affirm.

I.

We summarize only those facts believed necessary to an understanding of the issues raised on appeal.

Nix bought the F/V Explorer (the "Explorer" or the "ship") from Atcorp–II, a corporation then in bankruptcy. To finance the acquisition, Nix assumed an existing promissory note of Atcorp–II to the Bank in the original principal balance of $726,355.06. The note was secured by a first preferred ship mortgage on the Explorer and was duly recorded. Nix also executed a second promissory note in the principal amount of $73,644.94, secured by a second preferred ship mortgage that also was duly recorded. Both notes were payable in monthly installments. Nix fell behind in his monthly payments several times.

After Nix had defaulted, the Bank's *in rem* admiralty action against the Explorer was commenced on September 25, 1986[1] by the filing of the summons and complaint pursuant to 46 U.S.C. § 951 (Supp. III 1982).[2] On September 26, the court issued a Warrant of Maritime Arrest and ordered that any person claiming an interest in the Explorer was entitled to a prompt hearing to show why the arrest should be vacated or other relief granted. The ship was

---

[*] Of the Second Circuit, sitting by designation.
1. All dates in this opinion are in 1986 unless otherwise stated.
2. Section 951 provides in pertinent part:

"A preferred mortgage shall constitute a lien upon the mortgaged vessel in the amount of the outstanding mortgage indebtedness secured by such vessel. Upon the default of any term or condition of the mortgage, such lien may be enforced by the mortgagee by suit in rem in admiralty."

seized the same day, and a copy of the summons and complaint was served on the Explorer's captain, Scott Leavitt. On September 27, Leavitt told John Greenaway, the Explorer's business manager, that the Explorer had been seized. Notice of the seizure also was published in a newspaper as required by § 951.[3] The parties stipulated that copies of the summons and complaint and the order for issuance of the Maritime Arrest were sent by certified mail to the house Nix owns in Massachusetts. They were returned to the sender with the notation that they had been refused. Nix asserts that it was his tenant who refused service and that the Bank was aware that Nix was living abroad at the time.

On October 2, Greenaway telephoned Nix and told him that the Explorer had been seized. The record establishes—and appellant concedes—that by early October Nix was back in Massachusetts, having returned from abroad. Nix did not respond to the action in the district court. The court entered a default judgment on October 31 against the Explorer. On November 3, Nix commenced a separate action in the United States District Court for the District of Massachusetts challenging the foreclosure. On November 19, the Bank filed in the Maine action a motion for a special sale of the ship to take place after January 1, 1987, since Nix had alleged that he had foreign investors available after that date. The court granted the motion, giving Nix until December 12 to produce proof of a buyer. Nix did not produce such proof. The sale was scheduled for January 14, 1987.

On November 26, the Bank filed in the Massachusetts action a motion for a stay of that action because of the pendency of the Maine action. The motion was granted.

On December 15, Nix filed a motion in the Maine action seeking additional time to come forward with proof of a foreign investor. The motion was denied. The sale took place on January 14, 1987. The Bank was the high bidder at $170,000.

On January 23, 1987, Nix filed a motion in the Maine action seeking relief from the default judgment and for leave to file a late answer. He included in his motion papers a proposed answer asserting certain defenses. Nix claimed that he did not know that the action was pending until December 11, after the default judgment had been entered; that he had meritorious defenses; and that, although he was told of the seizure of the ship, he believed that the Bank was acting to seize peaceably under the Uniform Commercial Code (the "U.C.C.").[4]

In an opinion filed June 8, 1987, the court denied Nix's motion to vacate the default judgment for the following reasons: that there was no merit in Nix's claim that the notice was constitutionally insufficient; that Nix failed to demonstrate the requisite excusable neglect to vacate the default judgment; that Nix failed to allege any defense with the required specificity; that, in any event, the defenses were without merit; and that the possibility of a meritorious defense, when weighed against Nix's egregious conduct, did not justify setting aside the default judgment.

From the order entered on that opinion, appellant has taken the instant appeal.[5]

II.

Appellant raises essentially two issues on appeal. First, he claims that the notice of the action was constitutionally deficient. Second, he claims that the default judgment should be vacated because his failure

3. The newspaper notice was in the Portland Press Herald from September 30 to October 2.

4. Section 9–503 of the Uniform Commercial Code provides in relevant part that:

"Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process, if this can be done without breach of the peace or may proceed by action."

5. The court also stated that it would hold an evidentiary hearing on the Bank's motion for an order confirming the sale because of the disparity between the court appraisal and the Bank's bid. This issue is not involved in the instant appeal.

There is no finality problem with this appeal despite lack of Rule 54(b) certification, since the instant case falls within the scope of the exception for certain interlocutory admiralty orders. 28 U.S.C. § 1292(a)(3) (1982).

to answer was excusable and he had meritorious defenses.

Appellant claims on appeal that the district court misconstrued his first argument as a general challenge to the constitutionality of the notice provisions of the Supplemental Rules for Certain Admiralty and Maritime Claims ("Supplemental Rules"). Rather, appellant asserts that due process was violated as the rules were applied in the instant case. Either way, his claim is without merit.

The district court's opinion sets forth an excellent analysis of the constitutionality of the *in rem* proceeding provided for in the Supplemental Rules. We see no need to repeat it. Suffice it to say that courts have long recognized the special needs of persons engaged in maritime commerce, including a justification of the use of *in rem* proceedings to hold the vessel itself as the obligor. *See, e.g., Trans–Asiatic Oil Ltd. S.A. v. Apex Oil Co.,* 743 F.2d 956, 960–63 (1st Cir.1984); *Amstar Corp. v. S/S Alexandros T.,* 664 F.2d 904, 907–12 (4th Cir. 1981). The amended Supplemental Rules provide for judicial scrutiny before the issuance of the arrest warrant and they guarantee the ship owner a prompt post-seizure hearing, both of which satisfy due process concerns.

In short, the Supplemental Rules are constitutional; the notice given to Nix complied with those Rules; and the foreclosure was proper under 46 U.S.C. § 951, the provision governing foreclosure of preferred mortgages. Accordingly, we hold that there is no merit to appellant's first claim.

Appellant's second claim is that the default judgment and foreclosure sale should have been set aside. A motion to set aside a default judgment is within the sound discretion of the trial court. *American Metals Service Export Co. v. Ahrens Aircraft, Inc.,* 666 F.2d 718, 720 (1st Cir. 1981). The Federal Rules of Civil Procedure provide that a court may relieve a party from a final judgment for "mistake, inadvertence, surprise, or excusable neglect;" or for "any other reason justifying relief from the operation of the judgment." Fed.R.Civ.P. 60(b)(1), (6). We have established a standard for determining whether

relief from a default judgment is proper. In *American Metals, supra,* we held that a party seeking to have a default judgment set aside " 'bears the burden of showing good reason for the default and the existence of a meritorious defense.' " 666 F.2d at 720 (quoting *American Foreign Ins. Ass'n v. Commercial Ins. Co.,* 575 F.2d 980, 983 (1st Cir.1978)). The moving party is required to prove *both* grounds. *United States v. V & E Engineering & Construction Co.,* 819 F.2d 331, 336 (1st Cir.1987). We also have held that the district court's discretion may be guided by the moving party's " 'reasonable promptness' " or "dilatoriness in seeking relief." *American Metals, supra,* 666 F.2d at 720 (quoting *Consolidated Masonry & Fireproofing, Inc. v. Wagman Constr. Corp.,* 383 F.2d 249, 251 (4th Cir.1967)).

Nix, an attorney, admitted that he was told of the seizure of the Explorer. His assertion that he believed the Explorer had been taken peaceably pursuant to the U.C.C. falls wide of the mark of the excusable default requirement. An attorney, at the very least, should have been put on notice that a legal action was pending. Moreover, as the district court noted, Nix offered no ground to support his belief, and "it would be inexcusable for an attorney in Nix's position to proceed on the basis of mere *belief.*" *Maine National Bank v. F/V Explorer,* 663 F.Supp. 462, 466 n. 8 (1987) (emphasis in original). Finally, even under the U.C.C., a judicial proceeding could have been pending. Far from abusing its discretion, we hold that under the circumstances the district court's decision with respect to appellant's second claim was correct.

Since the district court was correct in concluding that the default judgment should not be set aside because there was no excusable default, we find it neither necessary nor appropriate to reach the merits of Nix's alleged defenses.

Accordingly, we affirm substantially for the reasons set forth in Judge Carter's excellent district court opinion.

Affirmed.