Neil E. LUTTRELL, Plaintiff,

v.

Marvin RUNYON, Postmaster General,
United States Postal Service, et
al., Defendants.

No. 96–4087–RDR.

United States District Court,
D. Kansas.

March 6, 1998.

Ira Dennis Hawver, Ozawkie, KS, for Neil E Luttrell.

D. Brad Bailey, Office of United States Attorney, Topeka, KS, for Marvin Runyon.

Charles R. Schwartz, Blake & Uhlig, P.A., Kansas City, KS, Leah Guggenheimer, Cohen, Weiss & Simon, New York City, for Vincent R. Sombrotto and National Ass'n of Letter Carriers of U.S.

### MEMORANDUM AND ORDER

ROGERS, District Judge.

This case arises from various actions taken in connection with plaintiff's employment by the United States Postal Service (USPS) and the response to those actions by plaintiff's union representatives. Plaintiff is suing Marvin Runyon, the Postmaster General, in his official capacity as a representative of the USPS. Plaintiff is also suing: Vincent Sombrotto, in his official capacity as President of the National Association of Letter Carriers (NALC), and Local Branch 10 of the NALC.

This case is now before the court upon motions for summary judgment or to dismiss brought by defendants. Plaintiff has also filed a motion to modify an arbitration award.

PLAINTIFF'S CLAIMS

Plaintiff alleges that he was unfairly treated in his employment because of the fear of USPS officials that disabled veterans were responsible for killing sprees at USPS facilities. More specifically, he alleges that defendants violated his rights under: the Constitution; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16(a); the Rehabilitation Act, 29 U.S.C. § 701 *et seq.;* the Age

Discrimination in Employment Act, 29 U.S.C. § 633a ("ADEA"); the Civil Rights Act of 1871, 42 U.S.C. § 1985(3); the Vietnam Era Veterans Readjustment Assistance Act of 1974, 38 U.S.C. § 4211 *et seq.;* the Veterans Preference Act, 5 U.S.C. § 2108; the Federal Tort Claims Act, 28 U.S.C. § 1346; and numerous federal statutes governing federal personnel administration. Plaintiff contends that he was given an improper "job discussion" by the Topeka Postmaster and the NALC Branch 10 President. He asserts that thereafter he was: ordered to take a fitness-for-duty (FFD) examination; suspended from work; and eventually removed from employment. Plaintiff further contends that the union defendants in this case breached their duty of fair representation by failing to protect or defend plaintiff from unfair accusations and unreasonably delaying the arbitration of plaintiff's grievance.

## SUMMARY JUDGMENT STANDARDS

The general guidelines for analyzing summary judgment motions were reviewed by the Tenth Circuit in *Martin v. Nannie and the Newborns, Inc.,* 3 F.3d 1410, 1414 (10th Cir.1993):

> Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Russillo v. Scarborough,* 935 F.2d 1167, 1170 (10th Cir.1991). The moving party bears the initial burden of showing that there is an absence of any issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga,* 942 F.2d 737, 743 (10th Cir.1991). If the moving party meets this burden, the non-moving party then has the burden to come forward with specific facts showing that there is a genuine issue for trial as to elements essential to the non-moving party's case. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir.1991). To sustain this burden, the non-moving party cannot rest on the mere allegations in the pleadings. Fed. R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Applied Genetics Int'l v. First Affiliated Securities, Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990).

## DEFENDANT RUNYON'S MOTION FOR SUMMARY JUDGMENT

The following facts appear to be uncontroverted. In 1993 plaintiff was a letter carrier at the Hicrest Station of the USPS in Topeka, Kansas. On July 23, 1993, plaintiff was placed on leave and ordered to report for a fitness-for-duty (FFD) examination by USPS management. Plaintiff asserts he was not paid while on leave. Plaintiff was examined by Dr. Robert Schulman on the same day. Plaintiff initially refused to sign a release which would permit the USPS contract doctor to review Dr. Schulman's report.

On August 5 or 6, 1993, a Notice of Proposed Removal was written and issued by USPS management to plaintiff. The results of Dr. Schulman's FFD examination were not made available to USPS management until August 12, 1993. Dr. Schulman was unable to make a recommendation about plaintiff's ability to work and suggested a comprehensive inpatient evaluation be conducted before making such a recommendation.

On August 27, 1993, the USPS and plaintiff's union, Local Branch 10 of the NALC, agreed that the Notice of Proposed Removal would be held in abeyance to allow plaintiff an opportunity to process a disability retirement application. While disability retirement may have been under consideration for a period of time, ultimately plaintiff decided against it. By a letter dated November 16, 1993, plaintiff was told that the Notice of Proposed Removal would no longer be held in abeyance and was effective November 13, 1993. Grievances were filed on behalf of plaintiff by union representatives on November 19, 1993 (Step 1) and November 30, 1993 (Step 2). These grievances were appealed through Step 3 and were certified for arbitration on May 5, 1994.

By letter dated December 10, 1993, plaintiff was removed from employment effective December 18, 1993. Plaintiff alleges that he remained on leave without pay status from July 23, 1993 until the date of his removal, December 18, 1993.

On August 26, 1993, plaintiff contacted an EEO counselor claiming that he had been discriminated against on the basis of age and disability when he was ordered to report for the FFD examination on July 23, 1993. The complaint also made general references to a plan to drop veterans from the USPS workforce and to force plaintiff to take retirement. This informal complaint was not resolved. Plaintiff filed a formal administrative complaint dated December 7, 1993. The complaint alleged age and disability discrimination as well as retaliation and made reference to "forced retirements" and "acts against me as well [as] 5 other Vietnam Veterans." The complaint requested reinstatement.

On March 23, 1994, the EEO acknowledged receiving the December 7, 1993 complaint and stated that the scope of the investigation would include only being forced to take an FFD examination and the USPS gaining access to confidential records. The EEO also stated that it would investigate only discrimination based on age and mental disability. Plaintiff was advised that if he did not agree with the defined issues he would have to present objections in writing within seven days of the receipt of the EEO letter.

On April 2, 1994, within the seven-day period, plaintiff filed a one-page affidavit with a 156–page attachment which included copies of newspaper articles, statutes, regulations and other materials. The affidavit and the attachment did not expressly or directly object to the limited scope of the EEO investigation.

The NALC and the USPS agreed to hold the arbitration of plaintiff's grievance in abeyance during the pendency of plaintiff's EEO complaint.

Over a year later, on May 7, 1995, an EEO hearing was conducted, but no administrative decision was issued prior to plaintiff filing the instant case on May 17, 1996. Two weeks prior to the EEO hearing, on April 21, 1995, plaintiff submitted a statement of the case which made three allegations: 1) that plaintiff was discriminated against on the basis of age and mental disability when he was forced to take an FFD examination; 2) that he was discriminated against on the same basis when the USPS gained access to confidential records; and finally 3) that he was removed from the USPS based on retaliation.

Plaintiff filed an appeal before the Merit Systems Protection Board (MSPB) regarding his removal and "constructive suspension" on February 5, 1996. The appeal was dismissed as untimely filed.

This case was filed on May 17, 1996. On June 26, 1996, the USPS issued a Final Agency Decision which dismissed plaintiff's EEO complaint because it was the basis of a pending civil action, i.e., this lawsuit.

Some months later, upon learning that the EEO action had been dismissed, the NALC reactivated the arbitration proceeding. It was determined on December 27, 1996, over the objection of the USPS, that the arbitration proceeding could proceed to the merits. After the case was heard upon the merits, the arbitrator found in favor of plaintiff on his claim for reinstatement, but denied plaintiff's claim for backpay. Plaintiff has filed a motion in this case to modify the arbitration award. This motion is opposed by USPS on jurisdictional grounds.

Plaintiff has not filed an administrative tort claim with the USPS.

*Constitutional Claims*

█ Plaintiff alleges that the actions taken against him were procedurally unfair and violated his constitutional rights. USPS contends that it is immune from plaintiff's constitutional tort claims. The court agrees with the claim of immunity.

The USPS is "[a]n independent establishment of the Executive Branch of the government of the United States ..." 39 U.S.C. § 201. As such the ability to sue or be sued is controlled by the federal government. See *Loeffler v. Frank,* 486 U.S. 549, 108 S.Ct. 1965, 100 L.Ed.2d 549 (1988) (sovereign immunity of USPS waived as to interest

awards). Although Congress has allowed the USPS to sue and be sued under certain circumstances (39 U.S.C. § 401), this provision has not been construed as a general waiver of sovereign immunity. Many cases support the proposition that the USPS and its officials cannot be sued for constitutional torts arising from an employment context. See *Federal Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 483–486, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994) (*Bivens* actions may not be brought against the United States); *Belhomme v. Widnall*, 127 F.3d 1214, 1217 (10th Cir.1997) (constitutional claim by federal employee in employment discrimination action preempted by remedy under Title VII); *Pereira v. U.S. Postal Service*, 964 F.2d 873, 877 (9th Cir.1992) citing, *McCollum v. Bolger*, 794 F.2d 602 (11th Cir.1986) *cert. denied*, 479 U.S. 1034, 107 S.Ct. 883, 93 L.Ed.2d 836 (1987); *Ellis v. U.S.Postal Service*, 784 F.2d 835, 839–40 (7th Cir.1986) (rejecting a *Bivens* claim); *Broussard v. USPS*, 674 F.2d 1103, 1112 (5th Cir.1982)(no *Bivens* claim against USPS supervisors); *Contemporary Mission, Inc. v. United States Postal Serv.*, 648 F.2d 97, 105 n. 9 (2d Cir.1981).

Plaintiff argues that the USPS is distinguishable from the United States. The court is not convinced by this argument. While there may be some special laws or regulations governing the USPS, in general the laws governing suits against federal agencies for employment discrimination apply to suits against the USPS because, as previously noted, by law the USPS is an "independent establishment ... of the government of the United States." 39 U.S.C. § 201.

Plaintiff's citation to *Baker v. Runyon*, 922 F.Supp. 1296 (N.D.Ill.1996) does not carry plaintiff's claim for two reasons. First, the case only concerns whether the USPS may be liable for punitive damages under Title VII; it does not deny that sovereign immunity ordinarily protects the federal government from suits for constitutional torts. Second, the district court was reversed even as to its holding on punitive damages by the Seventh Circuit which emphasized that the USPS is a "government agency" entitled to the same immunity from punitive damages under Title VII as other government agencies. *Baker v.*

*Runyon*, 114 F.3d 668, 670–71 (7th Cir.1997); see also, *Cleveland v. Runyon*, 972 F.Supp. 1326 (D.Nev.1997) (USPS is a "government agency" for purposes of Title VII).

Plaintiff has also cited *Lawrence v. United States*, 631 F.Supp. 631 (E.D.Pa.1982). *Lawrence* was decided before *Bush v. Lucas*, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983) where the Supreme Court made clear that a NASA employee could not proceed with a First Amendment claim for reinstatement and backpay because the claim was precluded by the comprehensive regulatory scheme in place. Obviously, to the extent *Lawrence* is inconsistent with *Bush*, we believe the principles of *Bush* must control.

Plaintiff's citations to *USPS v. Nat. Ass'n of Letter Carriers*, 847 F.2d 775 (11th Cir. 1988) and *Sullivan v. Dept. of Navy*, 720 F.2d 1266 (Fed.Cir.1983) are inapposite. Neither case sustains a constitutional tort action by a postal employee against the USPS. The Eleventh Circuit case was a successful challenge by the USPS to an arbitration award. The *Sullivan* case was an appeal from the MSPB asking for relief under the Civil Service Reform Act because of an alleged constitutional violation; it was not a constitutional claim brought outside the procedures and regulations of the Civil Service Reform Act.

Plaintiff has cited other cases, but they were also brought under the provisions of the Civil Service Reform Act, not directly under the Constitution.

*Breach of the Collective Bargaining Agreement*

It is conceded that plaintiff's claim of breach of the collective bargaining agreement is contingent upon plaintiff proving that the union defendants breached their duty of fair representation. See *Vaca v. Sipes*, 386 U.S. 171, 185, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). The union defendants insist that any such claim is barred by the statute of limitations. As discussed later in this opinion, the court believes there remains a question as to the limitations defense and the fair representation claim. Therefore, the court shall not grant judgment against plaintiff's claim for breach of the collective bargaining agreement.

*Veterans Preference Act (VPA) and Vietnam Era Veterans Readjustment Assistance Act (VEVRA)*

USPS asks for summary judgment against plaintiff's claims under VEVRA, 38 U.S.C. §§ 4211–4214, and VPA, 5 U.S.C. § 2108. USPS contends that there is no private right of action under these statutes. We agree. *Antol v. Perry,* 82 F.3d 1291, 1296–98 (3rd Cir.1996) (no right of action under VEVRA); *Wikberg v. Reich,* 21 F.3d 188, 189 (7th Cir.) *cert. denied,* 513 U.S. 961, 115 S.Ct. 421, 130 L.Ed.2d 336 (1994) (same); *Harris v. Adams,* 873 F.2d 929, 931 (6th Cir.1989) (same); *Barron v. Nightingale Roofing, Inc.,* 842 F.2d 20 (1st Cir.1988) (no private right of action under VEVRA against federal contractors); *Taydus v. Cisneros,* 902 F.Supp. 278, 282 (D.Mass.1995) (no right of action under VEVRA and VPA); *Wilson v. Amtrak National Railroad Corp.,* 824 F.Supp. 55 (D.Md.1992) (same); *Philippeaux v. North Central Bronx Hospital,* 871 F.Supp. 640, 647 (S.D.N.Y.1994)(no implied right of action under VPA or right enforceable under § 1983).

We acknowledge plaintiff's citation to *Blizzard v. Dalton,* 876 F.Supp. 95 (E.D.Va. 1995). In *Blizzard,* however, the court construed the reference to VEVRA's provisions as supporting a claim under the Rehabilitation Act. *Id.* at 99. As will be discussed later, we believe plaintiff's Rehabilitation Act claim must be dismissed for failure to exhaust administrative remedies.

In summary, the court shall follow the apparent majority of cases and grant summary judgment against plaintiff's claims under VEVRA and the VPA.

*Federal Tort Claims Act*

USPS contends that plaintiff's claim under the Federal Tort Claims Act must be dismissed because plaintiff failed to satisfy the legal prerequisite of filing an administrative claim. 28 U.S.C. § 2675(a). Plaintiff concedes this point and, therefore, summary judgment shall be granted against this claim.

*42 U.S.C. § 1985(3)*

The USPS has asked for summary judgment against plaintiff's claim under 42 U.S.C. § 1985(3). As noted before, the

USPS is an entity of the United States. 39 U.S.C. § 201. The United States may not be sued without its consent, and the United States has not consented to be sued under the civil rights statutes, including § 1985. See *Unimex, Inc. v. United States Dep't of Housing and Urban Dev.,* 594 F.2d 1060, 1061 (5th Cir.1979) (citations omitted); *Hohri v. United States,* 782 F.2d 227, 245 n. 43 (D.C.Cir.1986) (holding that provisions of 42 U.S.C. §§ 1981, 1983, 1985 and 1986, "by their terms, do not apply to actions against the United States"), *vacated on other grounds,* 482 U.S. 64, 107 S.Ct. 2246, 96 L.Ed.2d 51 (1987); *United States v. Timmons,* 672 F.2d 1373, 1380 (11th Cir.1982) ("It is well established ... that the United States has not waived its immunity to suit under the provisions of the [Civil Rights Act]"); *Biase v. Kaplan,* 852 F.Supp. 268, 289–90, n. 18 (D.N.J.1994) (§ 1985 claim asserted against individual defendants in their official capacities is barred by doctrine of sovereign immunity); *Kaufmann v. U.S.,* 840 F.Supp. 641, 648 (E.D.Wis.1993); *Proffitt v. U.S.,* 758 F.Supp. 342, 345 (E.D.Va.1990). Therefore, the plaintiff's § 1985 claims against the USPS as represented by defendant Runyon will be dismissed.

Additionally, the fact that plaintiff is suing Marvin Runyon in his official capacity means that Runyon could not have personally participated in a conspiracy to deprive the plaintiff of his civil rights. Moreover, because he allegedly acted in his official capacity, Runyon was not a "person" for purposes of satisfying § 1985's requirement that "two or more persons" conspired together. See *Santiago v. New York State Dept. of Correctional Services,* 725 F.Supp. 780, 783–84 (S.D.N.Y.1989) *rev'd on other grds,* 945 F.2d 25 (2nd Cir.1991) *cert. denied,* 502 U.S. 1094, 112 S.Ct. 1168, 117 L.Ed.2d 414 (1992) (holding that an agency is not a "person" under § 1985(3) and noting that agency officials acting in their official capacities are not "persons" under § 1983, a term which has the same meaning under § 1985).

Furthermore, allowing a remedy under § 1985(3) upon plaintiff's allegations would undermine the Congressionally-creat-

ed, preemptive scheme for dealing with employment discrimination claims by federal employees—i.e., Title VII. See *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 376–78, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979) (holding that if violation of Title VII could be asserted through § 1985(3), complainant could avoid most, if not all, of detailed and specific provisions of Title VII); *Brown v. GSA*, 425 U.S. 820, 829, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976) (dismissing § 1981 claim because Title VII is the "exclusive, preemptive administrative and judicial scheme for the redress of federal employment discrimination").

For all of the above-stated reasons, the court shall dismiss plaintiff's § 1985(3) claim against USPS.

*MSPB Appeal*

■ The USPS argues that this court lacks jurisdiction to consider an appeal from any decision of the MSPB. Plaintiff asked for MSPB review of his removal and "constructive suspension" more than two years after the actions occurred. Therefore, the MSPB dismissed the action as untimely. Under the ruling of the Tenth Circuit in *Wall v. United States*, 871 F.2d 1540, 1543 (10th Cir.1989) *cert. denied*, 493 U.S. 1019, 110 S.Ct. 717, 107 L.Ed.2d 737 (1990), no appeal of discrimination claims is allowed to a federal district court from the MSPB unless the discrimination issues before the MSPB have been decided on the merits. See also, *Canada v. Runyon*, 898 F.Supp. 754, 757 (D.Colo.1995) *aff'd*, 92 F.3d 1196 (10th Cir.1996)(table). Plaintiff has made reference to an unfair representation claim he made before the MSPB, but this is not relevant to the discrimination claims against the USPS. Accordingly, this court finds that before we may consider plaintiff's discrimination claims against the USPS, plaintiff must establish that he has exhausted his administrative remedies through some avenue other than the MSPB.

*Statutory employment discrimination claims (Title VII, ADEA, and Rehabilitation Act)*

The USPS contends that plaintiff's statutory claims of employment discrimination must be dismissed because plaintiff has failed to exhaust administrative remedies.

The necessity of exhausting administrative remedies prior to bringing an action under Title VII was discussed by the Tenth Circuit in *Khader v. Aspin*, 1 F.3d 968, 970–71 (10th Cir.1993):

"[E]xhaustion of administrative remedies is a jurisdictional prerequisite" to instituting a Title VII action in federal court. *Johnson v. Orr*, 747 F.2d 1352, 1356 (10th Cir.1984).

.     .     .     .     .

Section 717(a) of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e–16(a), prohibits discrimination in federal employee personnel actions on the basis of race, religion, sex or national origin. The authority to enforce § 2000e–16(a) is vested in the Equal Employment Opportunity Commission. *See id.* at § 2000e–16(b). Although § 2000e–16(c) permits an employee to file suit in federal court alleging a violation of § 2000e–16(a), it is well-settled that administrative remedies must first be fully exhausted. *See Brown v. General Services Administration*, 425 U.S. 820, 828–29, 96 S.Ct. 1961, 1965–66, 48 L.Ed.2d 402 (1976); *Sampson v. Civiletti*, 632 F.2d 860–862 (10th Cir.1980).

The requirement that a Title VII claimant exhaust administrative remedies serves the purpose of "giv[ing] the agency the information it needs to investigate and resolve the dispute between the employee and the employer."

The Circuit also noted that the same exhaustion requirements apply to claims brought under the Rehabilitation Act. *Id.* at 971 n. 3.

Under the law governing Title VII and Rehabilitation Act claims, after an agency has investigated a complaint and rendered a final decision, a claimant has two options: either filing an appeal to the EEOC within 30 days (see 29 C.F.R. § 1614.402) or filing a lawsuit within 90 days (29 C.F.R. § 1614.408(a)). If an appeal is made to the EEOC, then a lawsuit can be filed within 90 days of receiving a right to sue letter. 42 U.S.C. § 2000e–16(c); 29 C.F.R. § 1614.408(c).

As discussed in *Jones v. Runyon*, 32 F.3d 1454, 1457–58 (10th Cir.1994), under the ADEA, a federal employee again has two options: either he may bring a lawsuit directly to federal court after giving notice to the EEOC within 180 days of the alleged discriminatory act (29 U.S.C. § 633a(d); *Stevens v. Department of Treasury*, 500 U.S. 1, 7, 111 S.Ct. 1562, 114 L.Ed.2d 1 (1991)); or the employee may file an administrative complaint with the EEOC and later file a lawsuit within 90 days of the EEOC decision if he is unsatisfied with the administrative outcome, 29 U.S.C. §§ 633a(b)–(c).

The charges in any lawsuit should be "like or reasonably related to" the charges made to the EEOC, and may include new acts occurring during the pendency of the charge before the EEOC. *Ingels v. Thiokol*, 42 F.3d 616, 625 (10th Cir.1994).

■ The USPS alleges that plaintiff has failed to exhaust his administrative remedies with respect to his termination claim and any claim of sex discrimination. The USPS contends that plaintiff did not contact an EEO counselor regarding his notice of removal or any claim of sex discrimination. The USPS further contends that plaintiff did not object to the scope of the EEO investigation when given the opportunity to do so. Finally, the USPS argues that the termination and sex discrimination claims are not like or reasonably related to the allegations in the administrative complaint.

This is a close question. The court accepts the USPS argument as to the issue of sex discrimination. This issue was not sufficiently raised administratively. See *Williams v. Little Rock Municipal Water Works*, 21 F.3d 218, 222–23 (8th Cir.1994) (plaintiff's administrative complaint of retaliation cannot be expanded to include race discrimination); *Skeete v. IVF America, Inc.*, 972 F.Supp. 206, 210 (S.D.N.Y.1997) (complaint of race discrimination cannot be expanded to include sex discrimination); *Caldwell v. ServiceMaster, Inc.*, 966 F.Supp. 33, 49 (D.D.C.1997) (same).

■ However, the court shall not dismiss plaintiff's claim of termination. The court is troubled that in the hearing before the

EEOC, plaintiff *represented by counsel* "agreed and stipulated ... that the only issue ... addressed at ... [the] hearing [was] whether [plaintiff] was discriminated against on the basis of his age; date of birth, 7–17–47, and his mental disability, Post Traumatic Stress Disorder, a 30 percent service related disability, when he was forced to take a Fitness For Duty exam and the postal service allegedly gained access to confidential medical information." Transcript of proceedings held May 9, 1995, Exhibit 4 to Plaintiff's response to USPS motion to dismiss, at pp. 5–6. Nevertheless, the incidents which led to the FFD exam are basically the same incidents which allegedly caused plaintiff's discharge. In addition, plaintiff's administrative complaint asked for reinstatement. Obviously, if he were to be reinstated, it would reverse his discharge. A plaintiff may raise claims in his lawsuit which "grow out of" or are "like or reasonably related" to the administrative charges. *Wentz v. Maryland Cas. Co.*, 869 F.2d 1153, 1154 (8th Cir.1989). It appears to the court that plaintiff's termination claim has grown out of the administrative charges in this case.

*Summary*

In summary, the court shall grant summary judgment in favor of the USPS against plaintiff's claims under the Constitution, Title VII, VEVRA, VPA, § 1985(3), and the Federal Tort Claims Act. Otherwise, the motion of USPS is denied.

## MOTION TO DISMISS OF DEFENDANT SOMBROTTO

Defendant Sombrotto is being sued in his capacity as President of the NALC. Sombrotto has filed a motion to dismiss based upon facts drawn from plaintiff's amended complaint. Plaintiff has responded by making reference to a large set of materials beyond the pleadings. Under these circumstances, the court believes it may treat the motion to dismiss as a motion for summary judgment. *Arnold v. Air Midwest, Inc.*, 100 F.3d 857, 859 n. 2 (10th Cir.1996). The court shall consider Sombrotto's arguments in the order in which they appear in the motion.

*Unfair representation*

Sombrotto's first argument is that he and the NALC should be dismissed from any claim that the NALC breached its duty of fair representation for two reasons: 1) because plaintiff did not exhaust his contractual grievance procedures against the removal action; and 2) because the statute of limitations bars an unfair representation claim as to "nonremoval" claims. In particular, Sombrotto contends that plaintiff did not wait until a grievance contesting his removal as an employee had been arbitrated to bring the fair representation claim.[1] Additionally, Sombrotto asserts that plaintiff never brought a grievance in connection with "nonremoval" complaints such as the FFD examination, his suspension from employment, or an alleged improper job discussion which occurred prior to the directive to take an FFD examination. According to Sombrotto, the time for raising an issue with regard to his representation on these matters has exceeded the six-month statute of limitations established in *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) and applied in USPS cases such as *Abernathy v. United States Postal Service*, 740 F.2d 612, 614 (8th Cir.1984).

Plaintiff's main response to these arguments is that the NALC breached its duty of fair representation by agreeing to hold plaintiff's grievance in abeyance for over three years during the pendency of plaintiff's EEO complaint. It was not until plaintiff filed the instant case in May 1996, and thereby caused the dismissal of the EEO complaint, that the NALC scheduled plaintiff's grievance for arbitration. Plaintiff has also asserted that the NALC acted as an agent of the USPS and subverted plaintiff's employment by raising complaints regarding plaintiff with the Postmaster in Topeka, Kansas.

■ Plaintiff's response fails to rebut the statute of limitations argument as to the "nonremoval" issues which were not part of plaintiff's grievances. These issues arose

years before plaintiff filed suit in this case. Plaintiff's EEO complaint does not toll the statute of limitations for plaintiff's fair representation claims. *Johnson v. Artim Transportation System, Inc.*, 826 F.2d 538, 546–51 (7th Cir.1987) *cert. denied*, 486 U.S. 1023, 108 S.Ct. 1998, 100 L.Ed.2d 229 (1988).

■ Contrary to plaintiff's contention, the time for bringing plaintiff's fair representation claim also was not tolled by plaintiff's appeal to the MSPB. Plaintiff cites *Trent v. Bolger*, 837 F.2d 657 (4th Cir.1988) in support of his contention. The plaintiff in *Trent* made a timely claim before the MSPB which was considered sufficient to toll the time for bringing a claim for breach of the duty of fair representation.

In this case, however, plaintiff's appeal to the MSPB was untimely. An untimely administrative claim does not toll the time for bringing an action in court. See *Zipes v. Trans World Airlines*, 455 U.S. 385, 392–98, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982) (absent a legitimate waiver, estoppel, or equitable tolling, failure to file an agency charge within the applicable time period precludes a plaintiff from bringing a Title VII suit in federal court); *Higgins v. New York Stock Exchange*, 942 F.2d 829, 834 (2nd Cir.1991) (parties may not toll limitations periods at their own option by instituting administrative proceedings thereby forcing defendants to defend otherwise untimely actions); cf., *McGinty v. U.S.Dept. of the Army*, 900 F.2d 1114, 1117 (7th Cir.1990) (where complainant is to blame for absence of an administrative ruling on the merits, he has failed to comply with administrative exhaustion requirement).

Accordingly, the court shall dismiss plaintiff's fair representation claims as to the "nonremoval" issues.

■ With regard to the plaintiff's grievance concerning his removal, the grievance went to arbitration after plaintiff filed this lawsuit. Plaintiff was reinstated to his employment under the arbitration award. Given this development, it appears to the court

---

1. Indeed, since the instant motion was filed, plaintiff's grievance has been arbitrated. Plaintiff won a partial victory in arbitration. He has been reinstated to the USPS. Plaintiff has filed a motion in this case to modify the arbitration award to provide additional relief. This motion shall be addressed later in this order.

that the NALC can no longer contend that plaintiff failed to exhaust his contractual remedies. Therefore, the court shall refuse to dismiss this part of plaintiff's fair representation claim.

### Title VII, ADEA, Rehabilitation Act

Sombrotto has offered several arguments for the dismissal of plaintiff's claims under Title VII, the Rehabilitation Act and ADEA. The court believes these arguments are meritorious.

■ Initially, we agree with Sombrotto that the NALC is not covered by the statutes in question. The Rehabilitation Act prohibits discrimination against persons with a disability in "any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service." 29 U.S.C. § 794(a). There is no allegation in this case that the NALC operates a program or activity receiving Federal financial assistance, or if it does, that plaintiff experienced discrimination in the operation of that program. Moreover, we do not believe the Rehabilitation Act was intended to apply to the actions of a labor organization in representing or failing to represent the alleged victims of discrimination by the Postal Service. We join in the observation of the Ninth Circuit in *Herman v. United Brotherhood of Carpenters*, 60 F.3d 1375, 1381–82 (9th Cir.1995) that there is apparently no published case where a Rehabilitation Act claim has been sustained against a labor union. Moreover, we find the allegations of the complaint inadequate to tie the NALC to the USPS's alleged violations of the statute. Cf., *Leahy v. Board of Trustees*, 912 F.2d 917, 921–22 (7th Cir.1990) (dismissing § 1983 claim against union which refused to take grievance against city college to arbitration, finding insufficient allegations of conspiracy with a state actor); *Storlazzi v. Bakey*, 894 F.Supp. 494, 500–01 (D.Mass.) *aff'd*, 68 F.3d 455, 1995 WL 623676 (1st Cir.1995) (same).

■ We also agree with Sombrotto's contention that the NALC is not a "labor organization" for the purposes of being sued under Title VII and the ADEA. Under Title VII, "labor organizations" may be sued pursuant to 42 U.S.C. § 2000e–2(c) for discriminatory practices based on race, color, religion, sex, or national origin. The definition of "labor organization" must be considered in the context of other definitions. A "labor organization" is generally defined under § 2000e(d) as an organization representing "employees" against "employers." However, "employer" is defined to exclude the United States and any corporation owned by the United States. 42 U.S.C. § 2000e(b). It is undisputed that the NALC does not represent employees against any other employer but the USPS, an entity of the United States. Therefore, the NALC is not a "labor organization" which can be sued under Title VII because it does not represent employees against "employers" as the term is defined in Title VII. See *Rojas v. APWU*, Case No. 94–1083–FGT (D.Kan.1995) (Humphreys, M.J.); see also, *Newbold v. United States Postal Service*, 614 F.2d 46, 47 (5th Cir.) *cert. denied*, 449 U.S. 878, 101 S.Ct. 225, 66 L.Ed.2d 101 (1980)(APWU not a proper defendant under § 2000e–16(c)); but see, *Jennings v. American Postal Workers Union*, 672 F.2d 712 (8th Cir.1982) (APWU is a labor organization under Title VII). The ADEA uses the same or a similar definition of "employer" and "labor organization." 29 U.S.C. § 630(b) (d) & (e). Therefore, plaintiff's claims under the ADEA may be dismissed against Sombrotto and the NALC as well.

■ However, even if Sombrotto and the NALC were proper defendants under the statutes in question, dismissal is appropriate because plaintiff has not exhausted his administrative remedies against the union or its officials. The court has previously noted the importance of exhausting administrative remedies before proceeding with a lawsuit under Title VII, ADEA or the Rehabilitation Act. Neither Sombrotto nor the NALC has not been named as a respondent in an administrative complaint by plaintiff. This is a fundamental aspect of the administrative process because a party cannot participate in conciliation without notice. See *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 47, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) (under Title VII, a timely charge of employment discrimination is a jurisdictional prerequi-

site). There was no notice given to the NALC in this instance. No timely administrative charge of discrimination naming the NALC or its officials was made. Moreover, the exception to the rule requiring such notice as discussed in *Romero v. Union Pacific Railroad,* 615 F.2d 1303, 1311–12 (10th Cir. 1980) does not apply to this situation. Therefore, defendant has not exhausted his administrative remedies as required prior to bringing a claim against Sombrotto and the NALC under Title VII, the ADEA, or the Rehabilitation Act.

In sum, the court shall grant the motion for summary judgment as to plaintiff's Title VII, ADEA, and Rehabilitation Act claims against Sombrotto and the NALC.

*42 U.S.C. § 1985(3)*

■ Sombrotto and the NALC contend that plaintiff's claim under § 1985(3) must be dismissed because plaintiff has failed to allege a proper class-based motivation for the union's alleged wrongdoing. "A violation of section 1985 must include class-based or racially discriminatory animus." *Bisbee v. Bey,* 39 F.3d 1096, 1102 (10th Cir.1994) *cert. denied,* 515 U.S. 1142, 115 S.Ct. 2577, 132 L.Ed.2d 827 (1995) citing, *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). The Tenth Circuit has held that animus towards a class of handicapped persons is not a basis for a claim under § 1985. *Wilhelm v. Continental Title Co.,* 720 F.2d 1173, 1176–77 (10th Cir.1983), *cert. denied,* 465 U.S. 1103, 104 S.Ct. 1601, 80 L.Ed.2d 131 (1984). Other courts have reached the same conclusion regarding age bias. See *Sherlock v. Montefiore Medical Center,* 84 F.3d 522, 527 (2nd Cir.1996). Sex has been considered a class-based characteristic which may provide the basis for a lawsuit under § 1985. *E.g., Volunteer Medical Clinic Inc. v. Operation Rescue,* 948 F.2d 218, 224 (6th Cir.1991); but see *Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 269, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993) (declining to decide whether gender discrimination provides grounds for a § 1985(3) lawsuit).

However, the animus requirement demands that the alleged wrongful action be directed at a class " 'because of' not merely 'in spite of' its adverse effects upon an identifiable group." *Bray,* 506 U.S. at 272, 113 S.Ct. 753. Here, there is no allegation that the actions taken against plaintiff were motivated by an animus against males or that the actions were taken because of their adverse effects upon men. At most, plaintiff alleges that defendants have acted in a manner which had a discriminatory impact upon male combat veterans. This fails to state a claim of a violation of § 1985(3).

*Miscellaneous statutes*

■ Sombrotto and the NALC contend that the court should dismiss any claim plaintiff is making under 38 U.S.C. § 4212 *et seq.* (VEVRA) and various provisions under Title 5 of the United States Code. The court agrees. These provisions concern the obligations of employers or contractors with the federal government. Sombrotto and the NALC have not had an employment relationship with plaintiff. They are not contractors with the federal government. The court finds that plaintiff's claims under these statutes have no application to defendants Sombrotto and the NALC.

*Summary*

The court shall grant summary judgment in favor of Sombrotto against plaintiff's claims under Title VII, the Rehabilitation Act, the ADEA, § 1985(3), VEVRA and the various provisions of Title 5 of the United States Code cited within plaintiff's most recent complaint. Otherwise, the motion of Sombrotto is denied.

## LOCAL BRANCH 10'S MOTION TO DISMISS

Local Branch 10 has filed a motion to dismiss which relies upon the same arguments presented by defendant Sombrotto in his motion to dismiss. The motion shall be granted to the same extent as the motion of defendant Sombrotto.

## PLAINTIFF'S MOTION TO MODIFY ARBITRATION AWARD

On July 31, 1997, plaintiff prevailed in part upon the grievance he filed with the USPS. The arbitrator directed that plaintiff be reinstated with continued seniority, conditioned

upon a fitness for duty examination. However, no back pay was awarded. Plaintiff's motion indicates that he was called back to work and reported for duty on September 18, 1997.

Plaintiff has filed the motion to modify the arbitration award in order to recover back pay. Because this is, in essence, a new claim of relief, the court shall treat plaintiff's motion as one to amend the complaint. The USPS opposes plaintiff's motion upon jurisdictional grounds, arguing that plaintiff does not have standing to challenge the arbitration award and that the court does not have jurisdiction to consider plaintiff's arguments.

■■■■■ The court shall not permit plaintiff to proceed with his request to modify the arbitration order because we agree with defendant that plaintiff does not have standing to raise the issue. The normal rule is that an employee lacks standing to attack an arbitration award in court. See *Pierce v. Commonwealth Edison Co.,* 112 F.3d 893, 895 (7th Cir.1997); *Martin v. Youngstown Sheet & Tube Co.,* 911 F.2d 1239, 1244 (7th Cir.1990) (also rejecting jurisdiction under Federal Arbitration Act, 9 U.S.C. § 9); *Bacashihua v. U.S. Postal Service,* 859 F.2d 402, 405–06 (6th Cir.1988); *Shores v. Peabody Coal Co.,* 831 F.2d 1382, 1383–4 (7th Cir.1987); *McNair v. United States Postal Service,* 768 F.2d 730, 735 (5th Cir.1985); *Suttles v. U.S. Postal Service,* 927 F.Supp. 990, 1012 (S.D.Tex.1996). An exception to this rule exists if the employee asserts a breach of the duty of fair representation which is integral to the arbitration process. *Martin,* 911 F.2d at 1244. Plaintiff does not claim that the NALC violated its duty of fair representation in the presentation of plaintiff's claim to the arbitrator. Plaintiff's main charge against his union representation is that the NALC permitted the arbitration proceedings to be held in abeyance for too long. This claim is not integral to the result of the arbitration process. Accordingly, the court finds that the normal rule against court review of an employee's challenge to an arbitration award should apply in this case.

■■■ Plaintiff asserts that there is jurisdiction to consider his claim under the Back Pay Act, 5 U.S.C. § 5596. This is incorrect.

The Back Pay Act does not provide jurisdiction for this court to consider plaintiff's challenge to the arbitration award; it is derivative in application. See *Spagnola v. Stockman,* 732 F.2d 908, 912 (Fed.Cir.1984); *United States v. Connolly,* 716 F.2d 882, 887 (Fed.Cir.1983). So, the statute may not be applied unless the court is empowered to review the arbitration award upon plaintiff's motion. As already noted, plaintiff does not have the standing to bring this matter for the court's review.

Plaintiff has also made reference to 28 U.S.C. § 1500. However, this provision simply limits the jurisdiction of the United States Court of Federal Claims when a claim is pending in any other court. It is not relevant to this situation.

In sum, the court shall deny plaintiff's motion to modify the arbitration award.

CONCLUSION

The court shall grant in part and deny in part the motions for summary judgment or to dismiss filed by defendants in this case. The court shall also deny plaintiff's motion to modify the arbitration award.

**IT IS SO ORDERED.**