**Pamela BERGERON, Plaintiff,**

v.

**William J. HENDERSON, U.S. Postmaster General, et al., Defendants.**

**No. CIV. 98–362–P–C.**

United States District Court, D. Maine.

March 30, 1999.

Cynthia Dill, Portland, ME, for Plaintiff.

David R. Collins, AUSA, Office of the U.S. Attorney, Portland, ME, Jay P. McCloskey, United States Attorney, Bangor, ME, for Defendants.

Donald F. Fontaine, Fontaine & Beal, P.A., Portland, ME, James L. Linsey, Cohen, Weiss & Simon, New York, for Maine Merged Branch, National Association of Letter Carriers, AFL–CIO.

## MEMORANDUM OF DECISION AND ORDER

GENE CARTER, District Judge.

Plaintiff Pamela Bergeron filed a six-count Complaint against the Defendants United States Postmaster, the Maine Merged Branch 92, National Association of Letter Carriers ("Union"), and Paul Robinson, and Tom Ostrowski in their individual capacities. Counts I and II allege that the United States Postal Service sexually harassed and discriminated against Ms. Bergeron and retaliated against her for pursuing complaints with the Maine Human Rights Commission in violation of Title VII, 42 U.S.C. § 2000e *et seq.* ("Title VII"). In Count III, Plaintiff alleges that the Union sexually harassed and discriminated against her in violation of Title VII. The remaining three counts of the Com-

plaint raise state-law claims of intentional infliction of emotional distress (Count IV), negligent infliction of emotional distress (Count V), and defamation (Count VI) against the individually named Defendants Robinson and Ostrowski.

Plaintiff filed the Complaint (Docket No. 1) on October 23, 1998, and an Amended Complaint (Docket No. 2) with minor changes on November 3, 1998 (Docket No. 2). Service was made on the Union by serving copies of the Summons and Complaint on December 14, 1998. According to the Local Rules of the District of Maine, the Union was required to respond on January 6, 1999. The Union failed to answer the Amended Complaint in a timely manner as required by Rule 12(a) of the Federal Rules of Civil Procedure. On January 12, 1999, the Union filed a Motion to Avoid Entry of Default and for Additional Time to Answer (Docket No. 7) and, on January 26, 1999, it filed a Motion to Dismiss Count III of the Amended Complaint (Docket No. 9). Plaintiff opposes the Union's motions. In addition, on February 1, 1999, Plaintiff filed a motion to amend the Amended Complaint to add a claim against the Union under the Maine Human Rights Act, 5 M.R.S.A. § 4551 *et seq.* ("MHRA") (Docket No. 15).

## DISCUSSION

*A. Default Judgment Against the Union.*

■ Federal Rule 55(c) provides:

(c) Setting Aside Default. For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b).

Federal Rule 60(b) provides, in relevant part, relief from judgment or order for mistake, inadvertence, surprise, or excusable neglect. Under Rules 55(c) and 60(b), the determination of whether a party may be relieved of an entry of default or default judgment rests within this Court's sound discretion. *See McKinnon v. Kwong Wah Restaurant,* 83 F.3d 498, 502 (1st Cir.1996); *General Contracting & Trading Co., LLC v. Interpole, Inc.,* 899 F.2d 109, 112 (1st Cir.1990) (motions to set aside default judgments are left

to "the sound discretion of the trial court"); *Wayne Rosa Constr., Inc. v. Hugo Key & Son, Inc.,* 153 F.R.D. 481, 482 (D.Maine 1994) (*citing American Metals Service Export Co. v. Ahrens Aircraft, Inc.,* 666 F.2d 718, 720 (1st Cir.1981)). It is the moving party's burden to show both good reason for the default and the existence of a meritorious defense. *Wayne Rosa Constr., Inc.,* 153 F.R.D. at 482 (*citing American Metals Service Export Co.,* 666 F.2d at 720).

The United States Court of Appeals for the First Circuit has provided guidance for the determination of whether the defendant has established good cause for failing to answer a legal complaint. The court began in *McKinnon v. Kwong Wah Restaurant,* 83 F.3d at 503, with the following maxim: "Although in *Coon v. Grenier,* 867 F.2d 73 (1st Cir.1989), this court observed that 'good cause' is a mutable standard, varying from situation to situation, it is not so elastic as to be devoid of substance. No precise formula is suggested, for each case necessarily turns on its own unique facts." The court then outlined the following general guidelines for universal application that warrant consideration by a district court in determining whether a default judgment should be lifted:

(1) whether the default was willful; (2) whether setting it aside would prejudice the adversary; (3) whether a meritorious defense is presented; (4) the nature of the defendant's explanation for the default; (5) the good faith of the parties; (6) the amount of money involved; (7) the timing of the motion [to set aside the default].

*Id.* (citing *Coon,* 867 F.2d at 76). The Court will examine whether a default is appropriate in this case under all of the relevant factors.

■ Here, although the Court has not entered a default or default judgment against the Union, the Union has filed a motion to *avoid* the entry of default. In her objection to the Union's motion, Plaintiff contends that the Court should enter the default. It is the usual practice for the plaintiff to move for a default judgment and for the defendant to move to set aside a default judgment once entered by the court. The Court has before it Defendant's arguments, supported by evidence in the form of a declaration, regarding

the issue of good cause to avoid a default. Consequently, the Court shall consider the Union's motion to avoid default under the same principles that govern motions to set aside an entry of default.

The Union provides only a short explanation for the delay in its handling of this matter. The record shows that Ms. Bergeron personally served Michael J. Fox, President of the Union, on December 14, 1998, with the Complaint and Summons. *See* Affidavit of Michael J. Fox ("Fox Affidavit") (Docket No. 8) ¶ 3. The Summons clearly stated:

> To Maine Merged Branch 92, National Association of Letter Carriers, AFL–CIO, you are hereby summoned and required to file with the Clerk of this Court and serve upon Plaintiff's Attorney Cynthia A. Dill, Esq., ... an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

Mr. Fox attests that in the fourteen years that he has been president of the Union, it has never been sued and that he, personally, has never received a complaint or summons. *See id.* ¶¶ 1, 2. He explains that because the caption on the case was *Pamela Bergeron v. William J. Henderson, U.S. Postmaster General, et al.,* he understood that the case was only against the postal service and not against the Union despite the paragraph that specifically summoned the Union to respond within twenty days. *See id.* ¶ 4. Believing that the Union was to be a witness, rather than a party to the action, Mr. Fox failed to forward the Amended Complaint or Summons to the Union's attorneys. *See id.* Mr. Fox claims that he did not examine the copy of the Amended Complaint that was attached to the Summons, in which the Union was named in the caption as a defendant to the action until later in December. *See id.* ¶ 5. At that time, Mr. Fox noticed the caption of the Amended Complaint that named the Union as a party, however, rather than notifying counsel for the Union, Mr. Fox again did nothing, assuming that the postal service would file any appropriate papers on behalf of the Union. *See id.* On January 8, 1999, a Union "brother" pointed out to Mr. Fox that an answer was required within twenty days of receipt of the Summons and Mr. Fox called the United States Attorney, who informed him that the government would not be answering on the Union's behalf. *See id.* ¶ 6. On January 11, 1999, Mr. Fox finally forwarded the Summons and Amended Complaint to Union counsel. *See id.* Accordingly, the Union's purported reason for failing to respond to the Summons is that, due to Mr. Fox's ignorance regarding legal proceedings, it was unaware that it was a party to the lawsuit and required to file an answer.

The Union's explanation does not withstand the Court's scrutiny when it is considered in light of the fact that the Union was on notice that Ms. Bergeron was filing a civil complaint against it for sexual harassment and discrimination. The record reflects that the Union was aware of pending legal issues involving Ms. Bergeron through its participation in the administrative proceedings before the Maine Human Rights Commission (MHRC). On approximately February 16, 1998, Ms. Bergeron filed an administrative claim, alleging sexual discrimination and harassment against the Union, with the MHRC. *See* Plaintiff's Objection to Maine Merged Branch 92, National Association of Letter Carriers, AFL–CIO's Motion to Avoid Entry of Default (Docket No. 10) at 1. Mr. Fox was astute enough when he received notice of the MHRC claim to submit a response. *See id.* at 2. The Court is not convinced that upon receiving the Amended Complaint and Summons, he experienced a sudden ignorance of legal proceedings. Furthermore, when one hundred and eighty days had passed, the MHRC issued a right-to-sue letter dated August 19, 1998, which was served on the Union, clearly notifying the Union that Plaintiff was permitted to file a civil suit against the Union. *See id.,* Exhibit A.

Thus, it appears that the Union, and Mr. Fox personally, were well aware that the Union was involved in a pending legal problem and were capable of responding appropriately. The Union's sole explanation for its

failure to contact its legal counsel or respond to the Summons is that it did not understand the Summons' gravity. The Court finds the nature of the Union's explanation unsatisfactory in light of the fact that Mr. Fox had participated in the MHRC proceedings and had received the right-to-sue letter issued by the MHRC. Although there is no evidence that the delay was deliberate, the actions on the part of Mr. Fox amount to extreme negligence.

The meritorious defense prong counsels in favor of the Union. In its motion to avoid a default, the Union merely states in its papers that, "[t]here are material issues of fact involved in this case. The Defendant has good defenses to the Complaint, both factually and legally and desires to contest the Complaint as it is presently drafted." Motion to Avoid Entry of Default and for Additional Time to Answer ¶ 4. The Union subsequently filed a motion to dismiss one week after it filed its motion to avoid a default, wherein it asserted that Count III against it must be dismissed because the Court lacks jurisdiction over claims under Title VII against federal unions. The meritorious defense prong does not require that the Union demonstrate likelihood of success on the merits. Rather, the Union's "averments need ... plausibly suggest the existence of facts which, if proven at trial, would constitute a cognizable defense." *Coon*, 867 F.2d at 77. Here, though in a later pleading, the Union has advanced a legal argument that plausibly constitutes a cognizable defense. Accordingly, this factor counsels in favor of the Union's motion to avoid the entry of a default.

The "prejudice to the adversary" factor also favors the Union. Defendants filed the motion to avoid default less than a week after their answer to the Summons was due, *before* the Court entered a default against the Union, and *before* Plaintiff had moved for a default judgment against the Union. Because the Court has not yet entered the default judgment, Plaintiff would not have to repeat the process, suffer further delay, or risk losing some portion of payment for the work already performed as in the case where a default judgment is vacated. Plaintiff has not addressed the prejudice prong in her

memorandum, and there exists no facts in the record that support a finding that she would suffer prejudice were the Court to decline to enter a default judgment. Accordingly, the Court finds that the prejudice factor weighs in favor of the Union's motion.

Likewise, the timing of the Union's motion counsels against the entry of a default judgment. As the Court stated, the Union filed a timely motion to avoid a default judgment even before Plaintiff moved for default or default had been entered by the Court. Furthermore, a very short time period—less than a week—had passed between the day the Union's answer was due and the day it filed its motion to avoid default.

In addition, although the Court is dissatisfied with the Union's explanation for its failure to respond to the Amended Complaint and believes that this action amounts to negligence, there is no direct evidence that the default was willful or done in bad faith. Once aware that it was required to answer the Amended Complaint, that the government was not going to respond on its behalf, and that the Union must take it seriously, Mr. Fox forwarded the Summons to the appropriate parties and shortly thereafter the Union filed a response. The remaining factor—the amount of money involved—does not counsel for or against a default.

To conclude, consideration of the relevant facts in light of the overriding policy that actions should ordinarily be resolved on their merits, *see Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir.1981), counsels against the entry of a default against the Union. Accordingly, the Court will grant the Union's motion to avoid the entry of a default judgment against it.

## B. The Union's Motion to Dismiss.

The Union has moved pursuant to Federal Rule 12(b)(1) and (b)(6) to dismiss Count III against the Union in Plaintiff's Amended Complaint. The basis of the motion is that Title VII is inapplicable to the Union because the Union represents employees of the U.S. Postal Service. Accordingly, the Union argues that the Court lacks jurisdiction over the subject matter of Count III.

In 1972, Congress passed the Equal Employment Opportunity Act which amended Title VII to, for the first time, provide employees of federal government agencies protection against discrimination in their employment. *See* 42 U.S.C. § 2000e–16(a); *Brown v. General Services Admin.*, 425 U.S. 820, 825, 96 S.Ct. 1961, 1964, 48 L.Ed.2d 402 (1976). Prior to the 1972 amendment, federal employees had no redress for discrimination in their employment. *See id.* Title 42 U.S.C. § 2000e–16(c) provides that an employee of the federal government may file a civil action against the "head of the department, agency, or unit as appropriate." Under the plain language of this section, a union is not a proper party defendant. *See Newbold v. U.S. Postal Service*, 614 F.2d 46 (5th Cir.) (per curiam), *cert. denied*, 449 U.S. 878, 101 S.Ct. 225, 66 L.Ed.2d 101 (1980).

■ Under 42 U.S.C. § 2000e–2(c), an employee may sue a "labor organization" for discriminatory practices based on race, color, religion, sex, or national origin. In *Luttrell v. Runyon*, 3 F.Supp.2d 1181, 1191 (D.Kan. 1998), however, a district court held that a postal union was not a "labor organization" under 42 U.S.C. § 2000e–2(c). That court found that the statutory definition of "labor organization" excluded labor organizations that represent federal employees against federal employers. *See id.* An examination of the statutory sections by this Court supports the analysis of the United States District Court for the District of Kansas. A "labor organization" as used in 42 U.S.C. § 2000e–2(c) is defined in terms of its relationship with "employees" who are employed by an "employer." Specifically, 42 U.S.C. § 2000e(d) defines a "labor organization" as an organization representing "employees" against "employers." The definition of "employer" expressly *excludes* any "corporation wholly owned by the United States." *See* 42 U.S.C.2000e(b). The United States Postal Service ("USPS") is a corporation that is wholly owned by the United States, *see Luttrell*, 3 F.Supp.2d at 1191 (USPS is an entity of the United States), thus, the USPS is not an "employer," and the Union cannot, by definition, represent employees of an "employer." *See* 42 U.S.C. § 2000e–2(c); 42

U.S.C. § 2000e(d); *Luttrell*, 3 F.Supp.2d at 1191.

Plaintiff asks the Court to follow the decision of the United States Court of Appeals for the Eighth Circuit in *Jennings v. American Postal Workers Union*, 672 F.2d 712, 715 (8th Cir.1982), wherein the court permitted a claim under Title VII to proceed against the American Postal Workers Union under 42 U.S.C. §· 2000e–2(c). In permitting the claim against the postal union to go forward, the Court of Appeals for the Eighth Circuit in *Jennings* declined to follow the United States Court of Appeals for the Fifth Circuit's decision in *Newbold*. It did so because the court in *Newbold* had conducted its analysis under 42 U.S.C. § 2000e–16(c) (applicable to employers), rather than 42 U.S.C. § 2000e–2(c) (applicable to labor unions), against a federal union. The Court of Appeals for the Fifth Circuit held in *Newbold* that a union was not an employer permitted to be sued under 42 U.S.C. § 2000e–16(c), which deals with employers, and did not answer the question of whether federal unions are "labor organizations" under 42 U.S.C. § 2000e–2(c). However, the Court in *Jennings* held that a suit could proceed under 42 U.S.C. § 2000e–2(c) against a federal union without an analysis of the definitional provisions that relate to a "labor organization" liable under that section of Title VII.

■ This Court agrees with the analysis of the statutory provisions made by the court in *Luttrell*. Thus, it declines to follow the decision by the United States Court of Appeals for the Eighth Circuit. Accordingly, the Court holds that labor organizations that represent federal employees against federal employers are excluded from the definition of "labor organizations" that may be sued under 42 U.S.C. § 2000e–2(c).

In support of its motion, the Union has submitted the Declaration of Michael J. Fox, president of the Union, who declares that the Union is a national labor organization and has, at all material times, been a local union affiliated with the National Association of Letter Carriers AFL–CIO ("NALC") and that it administers NALC's nation-wide collective bargaining agreement with the USPS at the local level. *See* Fox Declaration

(Docket 9, Exhibit A) ¶ 2. Mr. Fox declares that the Union does not represent any employees other than employees of the USPS. *See id.* Plaintiff does not dispute that the Union represents only federal employees. Accordingly, because unions that represent federal employees against federal employers cannot be sued under Title VII, the Court will grant the Union's motion to dismiss Count III of the Amended Complaint.

### C. *Plaintiff's Motion to Amend Complaint.*

■ Plaintiff has moved pursuant to Federal Rule 15(a) to amend her Amended Complaint to add a claim under the MHRA against the Union. The Union opposes her motion. Under Rule 15(a), leave to amend shall be freely given as justice requires. Here, Plaintiff's claims against the Union under the MHRA are still within the statute of limitations. In addition, Plaintiff asserted claims under the MHRA in her complaint submitted to the Maine Human Rights Commission. Accordingly, there is no statute of limitations or exhaustion problems with the claims under the state act. In addition, a discovery schedule has not yet been issued in this case, and no discovery has been undertaken by Plaintiff or the Union. Therefore, the Union will not suffer any prejudice if the Court grants Plaintiff's petition to amend her Amended Complaint.

Although "leave to amend a complaint is often granted with liberality, that is not the case when the futility of the proposed amendment is apparent. Federal courts need not tiptoe through empty formalities to reach foreordained results." *Northeast Federal Credit Union v. Neves,* 837 F.2d 531, 536 (1st Cir.1988) (citations omitted). The Union argues that Plaintiff's motion to add a claim under the MHRA against the Union is futile because it is preempted by Title VII.

The Union relies on *Brown,* 425 U.S. at 829, 96 S.Ct. at 1966, wherein the Supreme Court held that Title VII is the "exclusive and preemptive" redress for employment discrimination claims in the federal sector. The preemption language in *Brown* is broad and suggests that there is no cause of action in the federal employment sector, other than that provided in 42 U.S.C. § 2000e–16(c),

allowing redress against federal employers. The Court finds that the decision in *Brown,* 425 U.S. at 822, 96 S.Ct. at 1962, supports Title VII preemption of a claim under state law against a *federal employer, see Callanan v. Runyun,* 903 F.Supp. 1285, 1295 (D.Minn. 1994) (finding no cause of action under the Minnesota Human Rights Act against a federal employer), but does not definitively preclude a state-law claim against a *union* that represents federal employees against a federal employer.

First, the defendant in *Brown* was an employer, not a union, and, thus, the Supreme Court did not directly consider preemption of claims against federal unions. Second, the Congressional concerns that the Supreme Court in *Brown* found had motivated Congress to amend the Act to provide redress against federal employers and indicated that the section was intended to be preemptive do not apply to suits against federal unions. The Supreme Court in *Brown,* 425 U.S. at 828–29, 96 S.Ct. at 1966, reasoned that Congress intended 42 U.S.C. § 2000e–16(c) to be the exclusive preemptive remedy for federal employment discrimination because it believed that no redress was currently available for discrimination in the federal sector. The Supreme Court examined the legislative history of 42 U.S.C. § 2000e–16(c) and found that Congress amended Title VII because it believed that it was impossible for "federal employees to engage the judicial machinery in cases of alleged employment discrimination." *Brown,* 425 U.S. at 827, 96 S.Ct. at 1965. Specifically, Congress was concerned that there was no redress under state law against federal employers because of sovereign immunity. *See id.* at 826–27, 96 S.Ct. at 1965. Although Congress was concerned that employees may not have been able to sue federal agencies under state law because of the doctrine of sovereign immunity, this concern does not arise in regard to suits by federal employees against unions that are private entities. Accordingly, it is not readily apparent on this record that 42 U.S.C. § 2000e–16(c) was intended by Congress to preempt state-law claims against unions and to be the exclusive remedy *against unions* that represent federal employees against fed-

eral employers. Of further import is that, in light of the fact that the Court holds, *supra* § IB, that no cause of action exists under either 42 U.S.C. § 2000e–16(c) or 42 U.S.C. § 2000e–2(c) against federal unions, a decision that Title VII preempts *state-law claims* by federal employees against their union would have the effect of leaving federal employees with no redress for union discrimination. Hence, the Court does not hold, on this record, that Plaintiff's claim under the MHRA against the Union is futile in that it is preempted by Title VII. The Court will grant Plaintiff's motion to amend her Amended Complaint to include a claim under the MHRA against the Union.

Accordingly, the Court **ORDERS** that the Union's motion to avoid a default judgment (Docket No. 7) be, and it is hereby, GRANTED. The Court further **ORDERS** that the Union's motion to dismiss Count III (Docket No. 9) be, and it is hereby, **GRANTED.** Finally, the Court **ORDERS** that Plaintiff's motion to amend her Amended Complaint (Docket No. 15) be, and it is hereby **GRANTED.**